143 P.3d 1143 (2006)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of A.J., a Child, and
Concerning C.J., Respondent-Appellant.
No. 05CA2697.
Colorado Court of Appeals, Div. A.
August 10, 2006.
*1145 James D. Robinson, County Attorney, Katherine E. Gregg, Assistant County Attorney, Denver, Colorado, for Petitioner-Appellee.
J. William Sierra, Brighton, Colorado, for Respondent-Appellant.
Karen A. Reid, Guardian Ad Litem.
Opinion by Chief Judge DAVIDSON.
C.J. (mother) appeals from a judgment terminating the parent-child legal relationship between her and her child, A.J. We affirm.
The evidence presented at the termination hearing established that mother, who was fifteen years old when the child was born, was herself the subject of a dependency and neglect case that resulted in the termination of her biological parents' parental rights.
The child was exposed to drugs in utero. He was removed from mother's care after she was adjudicated a juvenile delinquent and sabotaged her placement with the child in a mutual foster home by telling the foster parents she was a drug dealer and a gang member and that she was going to run away and leave the child in their care. The child was almost seven months old at the time of the termination hearing.

I.
As a threshold matter, we must address mother's motion that we accept her late-filed notice of appeal. Because we conclude that mother established good cause for failing timely to appeal, we grant the motion.
A. Although C.A.R. 3.4(b)(3) prohibits extending the deadline for filing a notice of appeal in dependency and neglect cases based on a showing of excusable neglect, it does not preclude us from exercising our discretion under C.A.R. 2 and 26(b) to retain jurisdiction over a late-filed appeal for good cause.
An order terminating parental rights affects the parent's fundamental liberty interests, *1146 and the right to appeal such an order is of significant import to the parent. C.S. v. People, 83 P.3d 627 (Colo.2004); People in Interest of A.J.H., 134 P.3d 528 (Colo.App. 2006). However, "the state also has a significant interest in finalizing a dependency and neglect proceeding in an expeditious manner to meet the child's emotional and psychological needs for a permanent home." People in Interest of T.D., 140 P.3d 205, 213 (Colo.App. 2006); see also C.S. v. People, supra.
In recognition of these often competing interests, the supreme court determined that dependency and neglect cases should no longer proceed under the time frames and other procedures in C.A.R. 4(a) for most civil appeals. The court therefore adopted C.A.R. 3.4, which sets forth an expedited appellate procedure for dependency and neglect cases. See People in Interest of A.J.H., supra; People in Interest of N.A.T., 134 P.3d 535 (Colo. App.2006); see also M.L.B. v. S.L.J., 519 U.S. 102, 119, 117 S.Ct. 555, 565, 136 L.Ed.2d 473 (1996) (refusing to "classify" termination cases "with the generality of civil cases" for appeal access purposes). The new rule strikes a careful balance between protecting parents' fundamental rights and furthering the state's legitimate interest in the expeditious resolution of dependency and neglect appeals. See People in Interest of T.L.D., supra.
This expedited procedure begins with a shorter period of time within which to file a notice of appeal than that allowed in appeals filed pursuant to C.A.R. 4(a). Specifically, under C.A.R. 3.4(b), the appellant in a dependency and neglect case has twenty-one, not forty-five, days within which to file a notice of appeal. Unless a notice of appeal is timely filed, the court of appeals lacks jurisdiction to hear the appeal. People in Interest of A.J.H., supra.
C.A.R. 3.4(b)(3) further provides that the time in which to file a notice of appeal in dependency and neglect cases "will not be extended." Thus, while C.A.R. 4(a), for most civil appeals, and C.A.R. 4(b), for criminal appeals, authorize the appellate court to extend the deadline for filing a notice of appeal for up to thirty days based on a showing of excusable neglect, C.A.R. 3.4, which supplants C.A.R. 4(a) in dependency and neglect cases, does not. See People in Interest of A.J.H., supra.
However, even in circumstances such as those here, in which an excusable neglect extension is not available, an appellate court remains empowered to extend or suspend deadlines based on a showing of good cause. See People v. Baker, 104 P.3d 893 (Colo. 2005); Estep v. People, 753 P.2d 1241 (Colo. 1988).
Specifically, C.A.R. 26(b) allows an appellate court to enlarge the time for filing after the expiration of a deadline "for good cause shown." In addition, "except as otherwise provided in C.A.R. 26(b)," C.A.R. 2 allows the court of appeals not simply to enlarge, but completely to suspend application of the requirements or provisions of any of the appellate rules "[i]n the interest of expediting decision, or for other good cause shown." See Colo. Ass'n of Pub. Employees v. Dep't of Highways, 809 P.2d 988 (Colo.1991) (suspending appellate procedure requiring that appeal of declaratory order of state personnel board be filed in the court of appeals, and retaining and resolving appeal erroneously filed in the supreme court).
Although some of the same factors are considered in applying both standards, the "good cause" standard applicable to extensions or suspensions granted under C.A.R. 2 and 26(b) and the excusable neglect standard applicable to extensions granted pursuant to C.A.R. 4(a) and (b) are not the same. See People v. Baker, supra; Estep v. People, supra; see also Singh v. Mortensun, 30 P.3d 853 (Colo.App.2001) (discussing difference between "good cause" standard applicable to motions for relief from entry of default under C.R.C.P. 55(c) and "excusable neglect" standard applicable to motions to set aside a default judgment pursuant to C.R.C.P. 60(b)).
For example, to establish excusable neglect, the circumstances must show that "there has been a failure to take proper steps at the proper time, not in consequence of carelessness, but as the result of some unavoidable hindrance or accident." Farmers Ins. Group v. Dist. Court, 181 Colo. 85, 89, *1147 507 P.2d 865, 867 (1973). Under that standard, absent unusual circumstances, an attorney's negligence in failing to meet a jurisdictional deadline does not constitute excusable neglect. See People v. Baker, supra; Estep v. People, supra. But the same negligent conduct may be sufficient to support a finding of good cause if the court determines that other factors, including "the potential prejudice the appellee may suffer from a late filing, the interests of judicial economy, and the propriety of requiring [the appellant] to pursue other remedies to redress" counsel's neglect, "weigh heavily in favor of permitting the late filing." Estep v. People, supra, 753 P.2d at 1248.
While the good cause standard, because it always is case specific, is more flexible than the excusable neglect standard, the good cause extension and suspension provisions of C.A.R. 2 and 26(b), are not unlimited, either in application or in scope. Specifically, C.A.R. 26(b) provides that "the court may not enlarge the time for filing a notice of appeal" from an order of a state agency or "beyond that prescribed in C.A.R. 4(a)." Likewise, by its reference to C.A.R. 26(b), C.A.R. 2 does not permit the court of appeals to suspend the deadlines for filing notices of appeal pursuant to C.A.R. 4(a) and in agency cases.
But this is not an agency case, and C.A.R. 4(a) is not applicable in dependency and neglect appeals, which, as discussed above, are in a category of their own for appellate procedure purposes. See People in Interest of A.J.H., supra; see also In re K.L., 91 S.W.3d 1 (Tex.App.2002) (discussing differences between civil and parental termination appeals and recognizing constitutional rights afforded parents in termination cases that civil appellants do not enjoy).
Thus, nothing in the plain language of C.A.R. 2 and 26(b) limits our discretion to extend or suspend the filing deadlines in C.A.R. 3.4, including the deadline for filing a notice of appeal for good cause.
Moreover, we presume that when it adopted C.A.R. 3.4, the supreme court was aware of the good cause provisions of C.A.R. 2 and 26(b) and of the difference between the good cause and excusable neglect standards. More particularly, we presume the court was aware of the parallel between C.A.R. 3.4(b)(3) and the excusable neglect extension provisions in C.A.R. 4(a) and (b), and that, like its C.A.R. 4 counterparts, the limiting language of C.A.R. 3.4(b)(3), without more, would not operate to limit our discretion to extend or suspend filing deadlines in dependency and neglect cases based on a showing of good cause. See Martin v. People, 27 P.3d 846 (Colo.2001) (in interpreting statutes, appellate courts generally presume that the General Assembly is aware of judicial precedent in particular area when it enacts legislation in that area); People v. Gilmore, 97 P.3d 123 (Colo.App.2003) (the general rules of statutory construction apply to the interpretation of procedural rules, including C.A.R. 26(b)); see also People in Interest of A.J.H., supra (the Colorado Rules of Appellate Procedure must be read in pari materia to fulfill their intent and avoid inconsistencies).
The ability of an appellate court to enlarge or suspend the rules in the interests of justice for good cause is broad, and it is important. People v. Baker, supra; Fields v. Suthers, 984 P.2d 1167 (Colo.1999); Estep v. People, supra; Weason v. Colo. Court of Appeals, 731 P.2d 736 (Colo.1987); Rivera v. Civil Serv. Comm'n, 34 Colo.App. 152, 529 P.2d 1347 (1974). Thus, the supreme court has rarely placed limitations on this discretion, either in its appellate rules or the case law interpreting them. When it has done so, the court has been careful and explicit, such as in the exception to our discretion under C.A.R. 2 and 26(b) to extend or suspend appellate deadlines that excludes notices of appeal filed in agency cases and pursuant to C.A.R. 4(a).
Thus, in adopting C.A.R. 3.4, if the supreme court had intended to eliminate our authority to enlarge or suspend the rules for "good cause," it could have expressly prohibited the application of C.A.R. 2 and 26(b) in dependency and neglect cases, or amended C.A.R. 26(b) to provide that an appellate court "may not enlarge the time for filing a notice of appeal beyond that prescribed in C.A.R. 4(a) and C.A.R. 3.4." But it did not do so, and we will not infer from the absence *1148 of such explicit language that that was really the court's intent.
Accordingly, we conclude that the language of C.A.R. 3.4(b)(3) prohibiting extensions of time does not preclude enlarging or suspending the deadline for filing a notice of appeal for good cause.
Because our conclusion is based on our reading of the plain language of the rules and because we perceive no conflict between C.A.R. 2 and 26(b) on the one hand and C.A.R. 3.4(b)(3) on the other, we need not resort to other principles of interpretation. See Anheuser Busch, Inc. v. Indus. Claim Appeals Office, 28 P.3d 969 (Colo.App.2001) (the Colorado Rules of Appellate Procedure are subject to the generally applicable rules of statutory construction, and if the language of the rules is clear and unambiguous, the court need not look further to determine their meaning).
B. Under very limited circumstances, we may accept jurisdiction over a late-filed appeal in a dependency and neglect case where the untimely filing was the result of ineffective assistance of counsel amounting to good cause.
In deciding whether to exercise our discretion to extend or suspend the deadline for mother to appeal the termination order, we are acutely aware that the supreme court's purpose in adopting C.A.R. 3.4 was to mandate the prompt resolution of dependency and neglect appeals to provide children with the permanence and stability they need as expeditiously as possible. Because adherence to the timelines set forth in the rule is critical to fulfilling that purpose, the good cause extension and suspension provisions of C.A.R. 2 and 26(b) must be narrowly construed to avoid creating an exception that swallows the rule. Only exceptional cases will justify accepting a late-filed notice of appeal.
Here, the trial court entered the termination order on October 27, 2005, and the deadline for filing a notice of appeal was November 17, 2005. However, mother did not file her notice of appeal and motion for extension of time until December 16, 2005.
In the motion, mother's attorney indicated that after the court announced its oral order at the conclusion of the termination hearing on October 18, 2005, mother told him she did not intend to appeal the order, but she left him a telephone message about ten days later indicating that she had changed her mind. Counsel did not immediately file a notice of appeal because he "decide[ed] that an in-person meeting was necessary" in light of mother's age and the "emotional tenor" of her message. Because of his "demanding trial and hearing schedule," counsel did not meet with mother until November 22, 2005, and did not file the notice of appeal until nearly a month later.
Counsel for parents in dependency and neglect cases have a duty to perfect an appeal by filing a notice of appeal for their clients. See C.A.R. 3.4(d) (the notice of appeal "must be prepared and signed by the appellant's trial counsel"); C.A.R. 3.4(g)(1) (the petition on appeal "shall be prepared by . . . appellant's trial counsel, or by substitute counsel so long as substitute counsel has filed an entry of appearance"); People in Interest of A.J.H., supra.
Thus, counsel here was required to file a notice of appeal on mother's behalf after she told him she wanted to appeal the termination order. See People in Interest of A.J.H., supra. Because mother communicated her desire to appeal to counsel at about the same time the final order was entered, counsel's failure to file a timely notice of appeal was not the result of mother's indecisiveness or inaction, but of counsel's carelessness and dereliction of his responsibilities. See People v. Baker, supra.
Although a parent's right to appointed counsel in termination proceedings is secured by statute and not constitutional mandate, C.S. v. People, supra, the standard for determining whether a parent has received effective assistance of counsel from a court-appointed attorney is the same as that in a criminal case. People in Interest of T.L.D., supra; People in Interest of V.M.R., 768 P.2d 1268 (Colo.App.1989); see also In re Heston, 129 Ohio App.3d 825, 827, 719 N.E.2d 93, 95 (1998) (the "test for ineffective assistance of counsel used in criminal cases is *1149 equally applicable to actions seeking to force the permanent, involuntary termination of parental custody"); In re K.L., supra (recognizing that parental termination cases are in the same category as criminal cases for purposes of ineffective assistance of counsel analysis).
In criminal cases, an attorney's failure to file a notice of appeal after his client has instructed him to do so constitutes ineffective assistance of counsel. People v. Baker, supra; Estep v. People, supra, 753 P.2d at 1246; see also Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (attorney who disregards specific instructions from his client to file a notice of appeal "acts in a manner that is professionally unreasonable"); Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).
In such a case, the appellant is not required to demonstrate that his appellate claims are meritorious, because the "prejudice resulting from the failure to file a notice of appeal is not in the outcome of the proceeding, but in the forfeiture of the proceeding itself." People v. Long, 126 P.3d 284, 286 (Colo.App.2005). Thus, when a criminal defendant claims counsel's ineffectiveness resulted in a deprivation of the right to appeal, the remedy is reinstatement of that right. People v. Baker, supra; Estep v. People, supra; People v. Long, supra.
Applying the criminal standard in this case, we conclude that counsel's failure to file a timely notice of appeal after mother told him she wanted to appeal the termination order amounts to ineffective assistance of counsel.
Nevertheless, in so concluding, we emphasize that not every dependency and neglect case in which counsel's ineffectiveness results in a late-filed appeal will constitute good cause warranting reinstatement of the right to appeal. Rather, as discussed above, the determination whether good cause exists under those circumstances requires us to balance the sometimes harmonious and sometimes competing interests of the parents, the children, and the state. See People in Interest of A.M.D., 648 P.2d 625 (Colo.1982) (due process requires the state to provide fundamentally fair procedures in a proceeding for termination of parental rights, but a parent's due process rights are subject to the power of the state to act in the child's best interests); People in Interest of A.J.H., supra. To strike the proper balance we must be judicious in our weighing of the factors set forth in Estep v. People, supra, particularly the effect of delay on the children and the unavailability of other remedies to redress counsel's negligence and the resultant loss of parental rights. See also In re K.L., supra, 91 S.W.3d at 11 (recognizing that money damages awarded in a civil malpractice do not "provide an apt remedy in the context of a termination case, where the effect of counsel's deficiencies may result in the irrevocable loss of the parent-child relationship").
The length of the delay and impact on the child is always a critical factor in cases such as these. Indeed, in this case, because the child was under the age of six when he was removed from mother's care, the expedited permanency planning (EPP) provisions applied and required that he be placed in a permanent home within twelve months of his initial placement out of the home. See §§ 19-1-102(1.6), 19-1-123, 19-3-703, C.R.S. 2005.
The trial court entered the termination order about seven months after the child's removal from the home, and mother filed her notice of appeal just over six weeks later. Thus, she filed her notice of appeal within nine months after the child's removal from the home, three months before the EPP deadline for permanent placement of the child. Viewed in the context of the statutory framework for EPP cases, the length of the delay in this case was relatively short.
Moreover, because mother timely communicated her decision to appeal the termination order to counsel, she did not contribute to, much less cause, the delay in filing the notice of appeal, and the deprivation of her parental rights is irrevocable. Regardless of the merits, mother has no meaningful remedy for the loss of her right to appeal, such as a civil malpractice action against her attorney, or post-conviction relief available to defendants in criminal cases.
*1150 Weighing all the factors, and balancing the need for expeditious handling of dependency and neglect cases with mother's liberty interest in parenting her child and her right to appeal the termination order, we conclude under the circumstances here that there is good cause for extending or suspending the filing deadline. See People v. Baker, supra; Estep v. People, supra; People in Interest of V.M.R., supra; see also State ex rel. M.M., 82 P.3d 1104 (Utah 2003) (appointed counsel's ineffectiveness for failing timely to appeal order terminating parental rights may constitute good cause to extend the deadline for filing notice of appeal, provided the parent's own negligence or intentional acts do not render such an extension inequitable).
We emphasize the narrow scope of our holding by noting that if any one of the circumstances in this case were different, we may have reached a different result. In particular, we might have been inclined to dismiss the appeal if the untimely filing of the notice of appeal were attributable to mother's carelessness or inaction, or if the delay had been longer or exceeded the EPP deadline for permanent placement of the child.

II.
Mother contends the trial court abused its discretion by denying her motion to continue the termination hearing. We disagree.
A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. C.S. v. People, supra.
In ruling on the motion, the trial court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child's need for permanency. See C.S. v. People, supra; People in Interest of M.M., 726 P.2d 1108 (Colo.1986).
In this case, the EPP provisions required that the termination hearing be held within 120 days after the motion for termination was filed. In EPP cases, the trial court "shall not grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay." Sections 19-3-508(3)(a), 19-3-602(1), C.R.S.2005.
Here, the department of social services (department) filed the motion to terminate on August 17, 2005, and the hearing was held on October 18, 2005. At the beginning of the hearing, mother's counsel requested a continuance to allow her to make more progress under the treatment plan. Because the EPP provisions required the court to hold the hearing by January 17, 2006, it could only continue the hearing for two months.
The People and the guardian ad litem objected, stressing the need for resolution of the matter because the proceeding was subject to EPP guidelines, and noting that mother had "done virtually nothing on her treatment plan" for almost seven months. The court denied the motion, concluding that mother had not shown good cause for a continuance and that delaying the proceedings was not in the child's best interests. In its findings, the court noted the child's need for permanency and mother's lack of progress under the treatment plan during the pendency of the proceedings.
The court's ruling reflects proper balancing of the reasons proffered for the continuance, the need for prompt resolution of the proceeding, and the child's best interests. Accordingly, we perceive no abuse of discretion in the court's denial of the motion to continue. See C.S. v. People, supra; People in Interest of M.M., supra.

III.
Mother contends the evidence does not support the trial court's finding that she did not reasonably comply with the treatment plan. We find no error.
To terminate the parent-child legal relationship pursuant to § 19-3-604(1)(c), C.R.S.2005, clear and convincing evidence must establish that an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent. People in Interest of A.M.D., supra.
*1151 It is the parent's responsibility to secure compliance with and success of a treatment plan. People in Interest of J.M.B., 60 P.3d 790 (Colo.App.2002); People in Interest of A.H., 736 P.2d 425 (Colo.App.1987). Absolute compliance is not required. People in Interest of C.L.I., 710 P.2d 1183 (Colo.App.1985). However, partial compliance, or even substantial compliance, may not be sufficient to correct or improve the parent's conduct or condition. People in Interest of D.L.C., 70 P.3d 584 (Colo.App.2003); People in Interest of D.M.W., 752 P.2d 587 (Colo.App.1987).
Section 19-3-604(1)(c)(I)(A), C.R.S.2005, provides that in EPP cases "no parent . . . shall be found to be in reasonable compliance with or to have been successful at a court-approved treatment plan when . . . [t] he parent has not attended visitations with the child as set forth in the treatment plan, unless good cause can be shown for failing to visit." See also C.S. v. People, supra.
Thus, if a trial court determines that a parent failed to establish good cause for failing to visit his or her child, it cannot conclude that the parent complied with and was successful under the treatment plan. People in Interest of M.T., 121 P.3d 309 (Colo.App.2005); see also People in Interest of E.S., 49 P.3d 1221, 1223 (Colo.App.2002) (the word "shall" involves a "mandatory connotation"); People in Interest of T.L.D., 809 P.2d 1120, 1122 (Colo.App.1991) (same).
Finally, in termination proceedings, the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).
Here, the treatment plan required mother to remain in the treatment facility where she had been placed; undergo mental health, psychological, and substance abuse evaluations and comply with all treatment recommendations; participate in mental health treatment and parenting classes; and attend supervised visitation with the child.
Shortly after the treatment plan was adopted, the treatment facility discharged mother because she violated its nonviolence policy. The facility to which mother was transferred also discharged her because she refused to stay in school, threw chairs, and was charged in another delinquency case with possession of marijuana seeds. The department placed mother in a third facility, but she left the facility several times without permission, refused to take her medication, fought with other residents, and pushed a staff member. After two months, the facility discharged her because of concern about her aggressive behavior and "explosive outbursts," and the possibility that she would injure the children who lived in the facility.
After she was discharged from the third facility, mother ran away for over a month. She then stayed in a juvenile detention center for two weeks until the department placed her in a fourth facility, where she lived at the time of the termination hearing. Mother made some initial progress at the fourth facility, but continued to refuse her medications, engage in aggressive and defiant behavior, and exhibit poor impulse control.
The psychiatrist who performed mother's psychological evaluation diagnosed her as suffering from post-traumatic stress disorder, chronic reactive attachment disorder, moderate to severe conduct disorder, and marijuana dependence. The evaluator also noted that mother had a history of alcohol and cocaine abuse and parent-child relational problems, and that she was both the victim and perpetrator of sexual abuse on a child.
The evaluator recommended that mother participate in a highly structured and intensive adolescent substance abuse treatment program and individual therapy to address her mental health issues. The evaluator also recommended that mother take parenting skills classes, obtain her GED, and undergo a psychosexual evaluation to determine whether she needed sexual perpetrator treatment.
The results of and recommendations following mother's substance abuse evaluation *1152 echoed those of the psychological evaluation. Specifically, the substance abuse evaluator diagnosed mother as being marijuana dependent and an alcohol and cocaine abuser, and recommended that she complete an adolescent outpatient substance abuse treatment program.
The caseworker testified that although mother was pursuing her GED, she had not stayed in a placement facility long enough to follow through on any of the evaluators' other recommendations or requirements of the treatment plan.
With respect to visitation, the evidence established that the child cried constantly throughout the visits and mother was unable to comfort him. The facility treatment coordinator reported that the visits were "agonizing" for the child. After mother ran away from her third placement facility, the magistrate told her she could not have visitation with the child until she demonstrated stability. Because mother was unable to do so, she had no visitation with the child during the three months before the termination hearing.
Based on this evidence and its evaluation of the credibility of the witnesses, the trial court found that mother did not reasonably comply with the treatment plan. In addition to finding that mother did not comply with the mental health and substance abuse treatment components of the plan, the court found that she did not show good cause for missing visitation with the child for the three months between the time she ran away from the third facility and the date of the termination hearing.
We agree with the trial court that, having found no good cause for the missed visits, it was required to conclude that mother was not in reasonable compliance with and had not been successful under the treatment plan. See § 19-3-604(1)(c)(I)(A); People in Interest of M.T., supra. And because the record supports the trial court's findings, with respect to both the missed visits and mother's failure to comply with the other critical components of the treatment plan, we will not disturb them on appeal. See People in Interest of M.M., supra; People in Interest of A.J.H., supra.

IV.
Mother also contends the trial court erred in finding that she is an unfit parent and that she cannot become fit within a reasonable time to meet the child's needs. Again, we find no error.
An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. The reasonable parental care standard requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. People in Interest of M.H., 10 P.3d 713 (Colo.App.2000).
To justify terminating the parent-child legal relationship, clear and convincing evidence must establish that the conduct or condition that renders the parent unfit is unlikely to change within a reasonable time. Section 19-3-604(1)(c)(III), C.R.S.2005; People in Interest of A.M.D., supra. In making this determination, a trial court may consider whether any change has occurred during the pendency of the dependency or neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. People in Interest of D.L.C., supra.
A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. People in Interest of D.L.C., supra; see § 19-3-604(3), C.R.S.2005. Thus, periods as short as five to nine months have been held to be sufficient time to comply with a treatment plan. See People in Interest of R.J.A., 994 P.2d 470 (Colo.App.1999); People in Interest of T.S.B., 757 P.2d 1112 (Colo.App.1988), aff'd on other grounds sub nom. B.B. v. People, 785 P.2d 132 (Colo.1990); People in Interest of R.B.S., 717 P.2d 1004 (Colo.App.1986).
Here, as noted above, the EPP provisions required that the child be placed in a permanent home within twelve months of his initial placement out of the home. See §§ 19-1-102(1.6), 19-1-123, 19-3-703.
*1153 The psychiatrist who performed mother's psychological evaluation concluded that, in light of her mental health issues and lack of parenting skills, and because she is impulsive and easily overwhelmed, it would be difficult for her to provide an emotionally stable environment for the child. The evaluator also concluded that mother's immaturity, poor judgment, and lack of education and training would make it difficult for her to obtain and maintain stable employment and housing.
The caseworker testified that, because mother had not addressed the issues that led to the child's removal from the home, she is an unfit parent. The caseworker explained that mother needs to "get herself straightened out" by addressing her substance abuse problems and mental health issues before attempting to parent a child. The caseworker testified that mother would also need to improve her parenting skills, address her aggression and other behavioral issues, and demonstrate stability for at least six months before the department would consider returning the child to her care. The caseworker expressed the opinion that the child needed consistency and stability, and could not wait for mother to be rehabilitated. This evidence provides ample support for the trial court's conclusion that mother did not resolve the issues that led to the child's adjudication, and that she is thus unfit and unlikely to become fit within a reasonable time to meet the child's needs.
The judgment is affirmed.
Judge NEY[*] concurs.
Judge WEBB dissents.
Judge WEBB dissenting.
Because C.A.R. 3.4(b)(3) unambiguously states that the time within which to file a notice of appeal in dependency or neglect proceedings "will not be extended," I would dismiss the appeal as untimely. Accordingly, and with respect, I dissent.
Neither the untimeliness of C.J.'s (mother) appeal, nor its causeher attorney's conscious delay beyond the filing deadline in order to meet with mother and discuss her inconsistent directions concerning an appealis in dispute. Thus, unlike in People in Interest of A.J.H., 134 P.3d 528 (Colo.App.2006), here we need not consider prejudicial reliance on misleading action by the trial court.
Before the adoption of C.A.R. 3.4, a division of this court dismissed as untimely a parent's appeal of a judgment terminating parental rights. People in Interest of A.E., 994 P.2d 465 (Colo.App.1999). In my view, the plain language and purpose of C.A.R. 3.4 make dismissal of untimely appeals in dependency or neglect proceedings much more appropriate than did the appellate rules applied by the division in that case.
The supreme court adopted C.A.R. 3.4 in 2005 to expedite appeals in such proceedings. People in Interest of A.J.H., supra. Consistent with that purpose, C.A.R. 3.4(b) reduces the time for appeal from the forty-five days allowed in other civil cases under C.A.R. 4(a) to twenty-one days. The twenty-one day deadline "will not be extended." C.A.R. 3.4(b)(3). In my view, we may not decline to give effect to the plain language of a supreme court rule. See People v. Jackson, 972 P.2d 698, 700 (Colo.App.1998) ("We look first to the language of the rule itself, and if the rule is plain and unambiguous, we apply the rule as written.").
For two reasons, I am not persuaded otherwise by the majority's reliance on C.A.R. 2 to suspend the twenty-one day deadline in C.A.R. 3.4(b)(3).
First, I consider criminal cases such as People v. Baker, 104 P.3d 893 (Colo.2005), and Estep v. People, 753 P.2d 1241 (Colo. 1988), on which the majority relies, to be inapposite in civil cases. The broad discretion afforded by C.A.R. 2 is limited, "except as otherwise provided in C.A.R. 26(b)." That rule, in turn, prohibits enlarging "the time for filing a notice of appeal beyond that prescribed in C.A.R. 4(a)." And C.A.R. 4(a) governs "Appeals in Civil Cases." Thus, exercise *1154 of the power to suspend under C.A.R. 2 in criminal cases is not so limited.
Second, while agreeing with the majority that the language of both C.A.R. 2 and 3.4(b)(3) is plain, the rules still conflict. I would reconcile the broad discretion of C.A.R. 2 and the specific prohibition of C.A.R. 3.4(b)(3) in favor of the latter.
In adopting C.A.R. 3.4, the supreme court could have resolved the tension between C.A.R. 2 and 3.4(b)(3) by including in the former a limiting cross-reference to the latter, comparable to the limiting cross-reference to C.A.R. 26(b). But the history of C.A.R. 3.4 shows no express consideration of that tension.
The supreme court may well have determined that the limiting cross reference in C.A.R. 2 to C.A.R. 26(b), which covers most civil cases through C.A.R 4(a), sufficiently protected the clear mandate of C.A.R. 3.4(b)(3). This view finds support in the exceptions to C.A.R. 4(a), which include C.A.R. 3.1, 3.2, and 3.3, but not C.A.R. 3.4. However, an assumption that the supreme court made such a determination is not necessary to save C.A.R. 3.4(b)(3) from the majority's application of C.A.R. 2.
Traditional principles of statutory construction inform the analysis of conflicting court rules, Leaffer v. Zarlengo, 44 P.3d 1072 (Colo.2002) (interpreting C.R.C.P. 33), including the Colorado Rules of Appellate procedure. People in Interest of A.J.H., supra.
One such principle provides, "As a general rule, a special or specific statutory provision prevails over a general provision unless the general provision is later in time and the legislature has manifested a clear intent that the general provision should prevail." Climax Molybdenum Co. v. Walter, 812 P.2d 1168, 1174 (Colo.1991); see Scholz v. Metro. Pathologists, P.C., 851 P.2d 901, 908 (Colo. 1993); see also § 2-4-205, C.R.S.2005.
Under § 2-4-205, the conflict between the provisions must be "irreconcilable" before the special provision will prevail. In my view, C.A.R. 2 and 3.4(b)(3) meet this test. Either C.A.R. 3.4(b)(3) means what it says, or it is nevertheless subordinate to C.A.R. 2. The only other appellate deadline that expressly cannot be extended is addressed in C.A.R. 26(b). That rule does not conflict with C.A.R. 2 because it is cross-referenced in C.A.R. 2. But the lack of a similar crossreference in C.A.R. 2 to C.A.R. 3.4(b)(3) requires recourse to statutory interpretation principles.
C.A.R. 3.4 is more specific than C.A.R. 2, and it was also adopted more recently than C.A.R. 2. Hence, I would conclude that "the more specific language in [C.A.R. 3.4(b)(3)] controls and prevails over the general language in [C.A.R. 2]." Leaffer v. Zarlengo, supra, 44 P.3d at 1079.
In reaching this conclusion, I acknowledge the policy of protecting fundamental parental rights from loss due to ineffective assistance of the parent's counsel. See generally In re K.L., 91 S.W.3d 1 (Tex.App.2002) (citing numerous cases). But accepting late appeals to preserve parental rights is at odds with furthering children's best interests by affording them permanence in dependency or neglect proceedings.
As the Minnesota Supreme Court explained in declining to accept a procedurally flawed appeal of a decision terminating parental rights:
Were we to allow simple failure to follow the rules as a good cause exception, the majority of dismissals for failure to timely file and serve a notice of appeal would be appealed and reversed. Such a result would not only delay final resolution of these cases but would also strip the rules of their important function of providing litigants with clear guidelines in which substantive issues can be pursued. Further, if we wanted to avoid this wholesale result by limiting such an exception to child protection cases, we would be in direct conflict with our own policy, as reflected by the rules, that these cases in particular need to be expeditiously handled.

In re Welfare of J.R., 655 N.W.2d 1, 56 (Minn.2003) (emphasis added).
Further, using C.A.R. 2 to accept untimely appeals, contrary to the mandate of C.A.R. 3.4(b)(3), is a potentially limitless exception because parental rights do not diminish over time. The objective of protecting parental *1155 rights affords no basis for distinguishing between the modest delay in this case and delays such as those in People v. Baker, supra (one year), and Estep v. People, supra (three years). Yet, "[e]ach delay in the termination of a parent's rights equates to a delay in a child's opportunity to have a permanent home and can seriously affect a child's chance for permanent placement." In re Welfare of J.R., supra, 655 N.W.2d at 5.
The majority's application of its "only exceptional cases" test to the facts of this case illustrates the slippery slope that C.A.R. 2 becomes when used to disregard the mandate of C.A.R. 3.4(b)(3). Here, mother told her attorney she did not desire to appeal. Later, but still within the time allowed by C.A.R. 3.4(b)(3), she told him the opposite. Instead of filing a timely notice of appeal, counsel ignored the deadline, ostensibly to meet with mother.
With respect, such conduct by a client and an attorney is not "exceptional." It is a typical foundation of many appellate legal malpractice claims. And to the extent that People v. Baker, supra, and Estep v. People, supra, illustrate "exceptional" cases, this conduct is distinguishable from both of them. In Baker, the defendant consistently expressed a desire to appeal. In Estep, the trial court was complicit in a procedural morass that led to an untimely appeal.
In my view, the only "exceptional" aspect of this case is loss of a parent's opportunity to challenge the decision terminating parental rights. Because this case stands for no more, it encourages similar application of C.A.R. 2 in every untimely appeal of such a decision. And in those future cases, I perceive no principled basis on which to distinguish the two-month delay here from delays of four, six, or eight months, much less how to determine when the state's "significant interest in finalizing a dependency and neglect proceeding in an expeditious manner," People in Interest of T.D., 140 P.3d 205, 213 (Colo.App.2006), prevails over a parent's fundamental liberty interest.
Accordingly, until our supreme court says otherwise, I would resolve this policy issue by following the plain language of C.A.R. 3.4(b)(3). Hence, I would dismiss the appeal as untimely.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24511105, C.R.S.2005.