Recently, in *People v. Bryant*, 122 P.3d 1026, 1029 (Colo.App.2005), a division of this court interpreted § 18–1.3–602(3)(a) and held that although a court may order restitution for lost wages "not received by the victim from the date the crime was committed to the date restitution is imposed," it may not order restitution for " 'loss of future earnings' [which] are earnings not expected to be received by the victim after restitution is imposed." We find the reasoning of *Bryant* persuasive and follow it here.

**In the Interest of A.J.H., a Child,**

**and Concerning R.W., Respondent–Appellant.**

**No. 05CA1129.**

Colorado Court of Appeals,
Div. A.

Feb. 23, 2006.

No Appearance for Petitioner–Appellee.

Daniel C. Kender, Pueblo, Colorado, for Respondent–Appellant.

DAVIDSON, Chief Judge.

R.W. (father) appeals from the judgment terminating the parent-child legal relationship between him and his child, A.J.H. We affirm.

Intervention was necessitated here because father was incarcerated and the child's mother was hospitalized after overdosing on methamphetamines. The child was eleven months old when he was removed from the home in February 2003. His mother's parental rights were terminated in April 2004.

The trial court held a separate hearing regarding the Department of Social Services' motion to terminate father's parental rights in February 2005. The court held a second hearing on March 17, 2005, at which it made extensive factual findings and orally announced its order terminating father's parental rights. After the court directed the County Attorney to prepare a written order for the court's signature, the hearing ended with the following colloquy:

FATHER'S COUNSEL: I'd like to withdraw from the case, and I'd like to see [father] appointed an appellate attorney. He obviously is indigent, Judge, because he's in custody.

THE COURT: Okay.

FATHER'S COUNSEL: And if [the County Attorney] could put the withdrawal in the order?

COUNTY ATTORNEY: That's fine, Judge.

THE COURT: All right.

FATHER'S COUNSEL: Then if we could get somebody for an appeal.

THE COURT: Sure. If you'll—as long as that's included in there so that I know what is going on there, okay?

COUNTY ATTORNEY: Okay. Sounds good.

The court entered a written order terminating father's parental rights on April 13, 2005, and mailed the order to the parties on April 14, 2005. The order did not address counsel's motion to withdraw and for the appointment of substitute counsel.

Pursuant to C.R.C.P. 60(a), which permits trial courts to correct clerical mistakes in judgments arising from oversight or omission, the court entered an addendum to the termination order on May 4, 2005, appointing trial counsel to represent father on appeal, and indicating that counsel would be permitted to withdraw "once the requirements concerning appeal are satisfied." The court mailed the addendum to the parties on May 16, 2005.

C.A.R. 3.4(b) provides that the appellant in a dependency or neglect case has twenty-one days within which to file a notice of appeal. When, as here, notice of entry of the termination order is mailed to the parties, the time for filing the notice of appeal begins to run the date of mailing. Entry of an order under C.R.C.P. 60(a) does not extend the time for filing a notice of appeal of the underlying judgment. *In re Marriage of Buck*, 60 P.3d 788 (Colo.App.2002). Accordingly, father's notice of appeal was due twenty-one days after April 14, 2005, the date the original termination order was mailed to the parties, or by May 5, 2005.

Because father did not file his notice of appeal until May 30, 2005, this court issued an order to show cause why the appeal should not be dismissed for failure to file a timely notice of appeal and resultant lack of jurisdiction. *See People in Interest of A.E.*, 994 P.2d 465 (Colo.App.1999)(the timely filing of a notice of appeal of an order terminating parental rights is a jurisdictional requirement, and the parent's failure to comply with that requirement mandates dismissal of the appeal).

In his response to the order to show cause, father argued that, during the quoted colloquy, the trial court granted counsel's motion to withdraw and agreed to appoint substitute appellate counsel. The response characterized the addendum as having "allowed [trial counsel] to withdraw and reappointed him as appellate counsel." According to the response, counsel called the trial court clerk seeking clarification of his responsibilities with respect to father's appeal, and the clerk informed counsel on May 23, 2005, that substitute counsel would be appointed after the notice of appeal was filed.

Concluding that C.A.R. 3.4 does not provide for any extension of time to file a notice of appeal and that father's notice of appeal was untimely filed, a three-judge panel dismissed the appeal. The trial court appointed substitute counsel, who filed a motion to reconsider the order dismissing the appeal. Another three-judge panel granted the motion, deferred to division resolution of the issue whether father's notice of appeal was timely, and directed parties to brief the issue whether this court has authority to grant extensions of time for filing notices of appeal in dependency and neglect cases.

I.

■ In his petition on appeal, father continues to argue that his appeal should not be dismissed as untimely. We agree. We conclude that, under the limited circumstances presented here, we have authority to grant an extension of time for filing the notice of appeal.

■ The Colorado Rules of Appellate Procedure are subject to the generally applicable rules of statutory construction. *Anheuser Busch, Inc. v. Indus. Claim Appeals Office,* 28 P.3d 969 (Colo.App.2001); *see also Crawford v. Melby,* 89 P.3d 451 (Colo.App.2003). Thus, we read all of the rules in pari materia to fulfill their intent and avoid inconsistencies. *McFarlen v. Eckhart,* 878 P.2d 11 (Colo.App.1993); *see also R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo.1992)(Children's Code must be construed in pari materia in order to effectuate legislative intent and to give consistent, harmonious and sensible effect to all parts).

Because an order terminating parental rights affects the parent's fundamental liberty interests, the right to appeal such an order is of significant import to the parent. *C.S. v. People In Interest of I.S.,* 83 P.3d 627 (Colo.2004); *see also B.B. v. People,* 785 P.2d 132 (Colo.1990); *People in Interest of D.R.W.,* 91 P.3d 453 (Colo.App.2004); *People in Interest of A.E.,* 914 P.2d 534 (Colo.App. 1996); *People in Interest of M.H.,* 855 P.2d 15 (Colo.App.1992).

In C.A.R. 3.4, the supreme court adopted amendments to the Colorado Appellate Rules to expedite the disposition of appeals in dependency or neglect cases. *See also* § 19–1–109(3), C.R.S.2005 (creating a "Child Welfare Appeals Workgroup" to submit a written report to the General Assembly to consider necessary statutory or other changes to ensure that appeals in dependency and neglect cases be resolved within six months after being filed). The new rule became effective March 1, 2005, less than two months before the trial court entered the original termination order in this case.

As noted above, C.A.R. 3.4(b) provides that appeals in termination cases must be filed within twenty-one days after entry of the order appealed, as opposed to the forty-five days allowed for criminal and most other civil appeals. *See* C.A.R. 4(a), (b). The rules also differ in another important respect: while C.A.R. 4(a) and (b) authorize the appellate court to extend the deadline for filing a notice of appeal for up to thirty days after the initial forty-five day period based on a showing of excusable neglect, C.A.R. 3.4 does not contain such an extension provision.

The thirty-day extension provisions in C.A.R. 4 do not apply in dependency and neglect cases. *See In the Interest of J.J.L.,* 119 P.3d 315 (Utah App.2005)(the extension provision in the Utah rule governing civil appeals does not apply in child welfare cases). Indeed, C.A.R. 3.4(b)(3) provides that the time in which to file a notice of appeal in dependency and neglect cases "will not be extended."

We nevertheless conclude that we may extend the deadline for filing the notice of appeal in this case based on the "unique circumstances exception" to procedural rules limiting a court's authority to grant extensions of time.

■ The unique circumstances exception applies "if a party reasonably relies and acts upon an erroneous or misleading statement or ruling by the trial court." *Converse v. Zinke,* 635 P.2d 882, 886 (Colo.1981). The exception is rarely invoked and applies only to an extreme situation. *Canton Oil Corp. v. Dist. Ct.,* 731 P.2d 687 (Colo.1987); *Hillen v. Colo. Comp. Ins. Auth.,* 883 P.2d 586 (Colo. App.1994); *Anderson v. Molitor,* 770 P.2d 1305 (Colo.App.1988); *Sandoval v. Trinidad Area Health Ass'n,* 752 P.2d 1062 (Colo.App. 1988).

In *P.H. v. People,* 814 P.2d 909 (Colo.1991), our supreme court applied the unique circumstances doctrine in an appeal of a termination order. In that case, the appellant filed a timely motion for extension to file the notice of appeal, but filed it in the trial court instead of the court of appeals. The trial court purported to grant the motion, and the appellant filed the notice of appeal on the extended deadline set by the trial court, which was within the seventy-five day jurisdictional limit of C.A.R. 4(a). However, because the appellant's counsel was under the mistaken impression that the trial court had properly extended the filing deadline, he did not seek an excusable neglect extension in the court of appeals before the seventy-five day deadline had passed as required by C.A.R. 4(a). A division of this court dismissed the appeal, concluding that it lacked authority to grant an extension sought after

the deadline, and that the notice of appeal was thus untimely.

In reversing the court of appeals' decision, the supreme court noted that the parent's failure to file a timely motion for extension and notice of appeal was the direct result of the trial court order purporting to extend the filing deadline. The court held that, because counsel reasonably relied on the erroneous trial court action, the court of appeals should have exercised its discretion to accept the late-filed appeal under the unique circumstances doctrine. *See also Weason v. Colo. Court of Appeals*, 731 P.2d 736 (Colo.1987)(applying unique circumstances doctrine to conclude that court of appeals erred by dismissing appeal in criminal case for failure to seek extension or establish excusable neglect within extended seventy-five day period allowed by C.A.R. 4(b), because the error was caused by the trial court's late appointment of counsel).

We recognize that *P.H. v. People, supra*, was decided when C.A.R. 4(a) governed the filing of notices of appeal in child welfare cases, while the notice of appeal in this case was filed pursuant to C.A.R. 3.4. As noted above, we also recognize that C.A.R. 4(a) authorizes the appellate court to extend the deadline for filing a notice of appeal based on a finding of excusable neglect, while C.A.R. 3.4 expressly provides that the time for filing a notice of appeal will not be extended.

The difference between the two rules might influence the determination whether the court has authority to grant an extension for good cause pursuant to C.A.R. 2 or 26(b). But it does not affect our analysis regarding the applicability of the unique circumstances exception, which is not rooted either in the excusable neglect extension provisions of C.A.R. 4 or the good cause extension provisions of C.A.R. 2 and 26(b). Moreover, the "no extensions" provision in C.A.R. 3.4(b) does not preclude application of the unique circumstances doctrine, because it is an exception to procedural rules limiting a court's authority to grant extensions.

Here, the trial court did not expressly grant counsel's motion to withdraw and for appointment of appellate counsel when it entered the oral order terminating father's parental rights. However, the court's responses to counsel's request and the colloquy regarding the contents of the written order with respect to father's representation on appeal was ambiguous and misled counsel into concluding that the court had granted his motion and would appoint appellate counsel in the written order.

We are aware that C.A.R. 3.4 plainly provides that, unless the appellant proceeds pro se, trial counsel is required to file the notice of appeal and continue to represent the parent on appeal until substitute counsel enters an appearance. *See* C.A.R. 3.4(d) (the notice of appeal "must be prepared and signed by the appellant's trial counsel"); C.A.R. 3.4(g)(1) (the petition on appeal "shall be prepared by ... appellant's trial counsel, or by substitute counsel so long as substitute counsel has filed an entry of appearance," and "[e]xcept for extraordinary circumstances, substitution of counsel shall not be grounds for an extension of time"). Thus, because substitute counsel had not entered an appearance before the deadline for filing the notice of appeal had passed counsel should have recognized his continuing responsibilities and filed a timely notice of appeal, despite the misleading trial court ruling.

Nevertheless, the trial court bore some responsibility for the late filing by entering an equivocal ruling regarding the motion to withdraw and for appointment of substitute counsel. Accordingly, we conclude that we have the authority to accept father's untimely appeal under the unique circumstances doctrine. *See P.H. v. People, supra; Weason v. Colo. Court of Appeals, supra.*

In determining whether to exercise our discretion to entertain an untimely appeal in a dependency and neglect case, we must consider not only the reasons for the delay, but also the child's need for finality in the proceedings. *See* §§ 19–1–103(70), 19–1–104(1)(d), 19–1–108(3)(a), C.R.S.2005; *see also C.S. v. People in Interest of I.S., supra* (in ruling on a motion for continuance in dependency and neglect proceedings, the trial court should balance the need for orderly and expeditious administration of justice

against the facts underlying the motion, while considering the child's need for permanency); *People in Interest of T.E.M.*, 124 P.3d 905 (Colo.App.2005)(same).

We are mindful of the fact that the child in this case had been placed out of the home for well over two years when father filed his notice of appeal. However, in light of his fundamental liberty interest in the parent-child relationship, and because we cannot say with any conviction that the trial court's ruling did not contribute to father's failure to file a timely notice of appeal, we conclude that he should not receive the harsh sanction of losing his right to appeal. *See P.H. v. People, supra; Weason v. Colo. Court of Appeals, supra.*

Our conclusion is bolstered by the fact that the confusion regarding trial counsel's role in father's appeal arose less than two months after C.A.R. 3.4 became effective, and father filed the notice of appeal within two weeks after the trial court mailed the addendum, which clarified that trial counsel was responsible for filing the notice of appeal.

Accordingly, we accept father's late-filed appeal and now turn to the merits of his argument regarding the propriety of the termination order.

## II.

Father claims the trial court erred in finding that the treatment plan was appropriate and that the department made reasonable efforts to rehabilitate him and reunite him with the child. We find no error.

The state must make reasonable efforts to prevent out-of-home placement of abused or neglected children and to reunite the family. Sections 19–1–103(89), 19–3–100.5, 19–3–604(2)(h), C.R.S.2005; *see also People in Interest of J.M.*, 74 P.3d 475 (Colo.App.2003).

Among the efforts required of the department are an assessment of the family and the development of a case plan for the provision of necessary services, which may include home-based counseling and referrals to public and private assistance resources. Section 19–3–208(2)(b), C.R.S.2005.

The department must also devise an appropriate treatment plan for the parent. Section 19–3–508(1)(e), C.R.S.2005. The purpose of a treatment plan is to preserve the parent-child relationship by assisting the parent in overcoming the problems that led to the dependency adjudication. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986).

An appropriate treatment plan is one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time" and relates to the child's needs. Section 19–1–103(10), C.R.S.2005. The appropriateness of a treatment plan is measured by its likelihood of success in reuniting the family, and it must be assessed in light of the facts existing at the time of its approval. *People in Interest of M.M., supra; People in Interest of A.H.*, 736 P.2d 425 (Colo.App. 1987).

The fact that a parent is incarcerated at the time of an adjudication of dependency or neglect does not necessarily make it impossible to devise a treatment plan aimed at rehabilitating the parent and preserving the parent-child relationship. However, a parent's incarceration "may often render more difficult the crafting of a meaningful and workable plan." *People in Interest of M.C.C.*, 641 P.2d 306, 309 (Colo.App.1982). Even a relatively short period of incarceration may bear on the issue of whether a parent can become fit within a reasonable time. *See People in Interest of M.H.*, 10 P.3d 713 (Colo.App. 2000).

Because success of a treatment plan cannot be guaranteed, a plan is not necessarily inappropriate if it fails to remedy the parent's problems and to reunite the family. *People in Interest of M.M., supra; People in Interest of A.H., supra.* The parent is responsible for securing compliance with and success of a treatment plan. *People in Interest of J.M.B.*, 60 P.3d 790 (Colo.App. 2002); *People in Interest of A.H., supra.*

The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the trial court. Thus, a

trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

■ Here, the evidence presented at the termination hearing established that father had been incarcerated for most of the child's life and for all but a few months of the dependency and neglect proceedings.

The caseworker testified that the treatment plan was designed to address father's parenting deficiencies and that it was amended several times to add or alter requirements to adjust to his changing circumstances.

The plan required father to submit to a substance abuse evaluation and participate in substance abuse classes while in custody; provide random urinalysis samples; submit to a mental health evaluation and follow all treatment recommendations, including that he participate in individual and family therapy, and attend parenting, domestic violence, and anger management classes; maintain stable housing and employment when not in custody; maintain monthly contact with the caseworker and notify her of any changes in his living situation or contact information; and have weekly visitation with the child. Father was also ordered not to live with his wife after being released from custody, because they had been involved in several domestic violence incidents, and the parent-child relationship between her and the child had been terminated as a result of her chronic substance abuse and mental health issues.

The caseworker testified that, although father complied with some of these requirements, he did not comply with the critical components of the plan and had thus been unsuccessful in rehabilitating himself as a parent.

Specifically, the evidence established that father did not attend domestic violence or anger management classes while in custody. The caseworker testified that when father was released, she gave him referrals to providers for mental health treatment, and anger management, domestic violence, and parenting classes, but he did not follow through. Father had a positive urinalysis test, admitted having used cocaine, was unable to obtain

employment or stable housing when not in custody, and did not maintain contact with the caseworker or provide her with his contact information.

Of particular concern to the department was the fact that father chose to live with his wife when he was not in custody, despite having been ordered not to do so. Father acknowledged that his wife's parental rights had been terminated and that he was aware of the requirement that he not live with her, but testified that her ongoing substance abuse problem did not present a danger to the child and that he would never leave her because she was mentally ill and needed him.

With respect to visitation, the evidence established that father's interactions with the child were appropriate, but that the visits were suspended after he was arrested and reincarcerated in connection with a domestic violence incident between him and his wife that occurred after he had been released from custody.

Based on this evidence, the trial court found that father's lack of success under the plan was the result of his noncompliance and failure to take advantage of the services provided, not an inherent weakness in the plan itself or the department's failure to provide the services he needed.

Because the record supports the court's findings, we find no abuse of discretion in its determination, based on clear and convincing evidence, that the treatment plan was appropriate and that the department made reasonable efforts to rehabilitate father and reunite him with the child. *See People in Interest of M.M., supra; People in Interest of C.A.K., supra; People in Interest of J.M., supra; People in Interest of A.H., supra.*

In so concluding, we reject father's claim that the treatment plan was inappropriate because the final version of the plan was not adopted until thirty-one days after the department filed its motion to terminate his parental rights.

The department has an ongoing duty to make reasonable efforts to rehabilitate a parent after a motion to terminate is filed. Here, the department fulfilled that obligation by seeking amendments to the plan to ac-

commodate father's changing circumstances, and the court's adoption of the amendments after the motion to terminate was filed did render the plan appropriate.

Moreover, the evidence established that the amendments to the plan concerned visitation, and not the long-standing provisions of concern to court, which required father to participate in classes and therapy and to maintain housing and employment, or the court's order prohibiting father from residing with his wife. Father does not explain how, in light of his noncompliance with the order that he not live with his wife and the other critical components of the plan, the result would have been different had the amendments to the plan been adopted earlier.

Based on our disposition, it is not necessary to address father's additional arguments.

The order is affirmed.

Judge VOGT and Judge LOEB concur.

The **PEOPLE** of the State of Colorado, In the Interest of **N.A.T., J.M.T., Jr.,** and **D.B.G.,** Children, Upon the Petition of the Denver Department of Human Services, Petitioner–Appellee,