2014 CO 64

**The PEOPLE of the State of Colorado, Petitioner**

**IN the INTEREST OF Minor Child: S.N.,**

**v.**

**S.N., a/k/a S.S., and M.A.S., Respondents**

**Supreme Court Case No. 13SC995**

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioner: Ben H. Pearlman, County Attorney, Boulder County Attorney's Office, Jeanne P. Bergman, Assistant County Attorney, David E. Hughes, Deputy County Attorney, Ruth Becker, Deputy County Attorney, Boulder, Colorado

Attorneys for Respondent S.N., a/k/a S.S.: Scott T. Poland, Andrew C. Poland, Lakewood, Colorado

Attorney for Respondent M.A.S.: Robert A. Lubowitz, Denver, Colorado

Guardian ad Litem for the Minor Child: Meinster & Associates, PC, J. Barry Meinster, Conifer, Colorado

Attorneys for Amicus Curiae Colorado Counties, Inc.: Hall & Evans, L.L.C., Thomas J. Lyons, Malcolm S. Mead, Rachel E. Yeates, Denver, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1 We granted certiorari to consider whether summary judgment is ever appropriate in dependency and neglect adjudications involving prospective harm. The court of appeals held that a trial court can *never* grant summary judgment in prospective harm cases because reasonable minds can always draw differing inferences from the evidence. We, however, conclude that, when the underlying material facts are undisputed, reasonable minds *could* reach one inference based on the specific facts of the case. We therefore hold that courts must evaluate whether summary judgment is appropriate in a dependency and neglect adjudication involving prospective harm on a case-by-case basis. Thus we reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 2 The Boulder County Department of Social Services removed baby S.N. from her parents[1] at the hospital shortly after her birth. Six days after S.N.'s birth, the trial court terminated both parents' parental rights to S.N.'s three older siblings. The People then filed a petition in dependency and neglect for S.N., after which they filed a motion for summary judgment on adjudication. Because S.N. had never been in her parents' care, the People's argument rested entirely upon prospective harm: that, if S.N. was returned to her parents, (1) she would lack "proper parental care"; (2) her "environment [would be] injurious to her welfare"; and (3) her parents would fail or refuse to provide the care that is "necessary for her health, guidance, or well-being." S.N.'s guardian ad litem supported the People's motion for summary judgment. The father filed a verified response in opposition. Additionally, the mother filed a response and supporting affidavit, asking the court to deny the motion.

¶ 3 The trial court granted the People's motion for summary judgment, and both parents appealed to the court of appeals. Instead of deciding if summary judgment was appropriate on the facts of this case, the court of appeals found that reasonable minds could *always* differ about whether the statutory criteria are met in a dependency and neglect adjudication based on prospective harm. *See People in Interest of S.N.*, 2013 COA 157, ¶ 32, —— P.3d ——. It therefore concluded that, as a matter of law, summary judgment is never appropriate in dependency and neglect adjudications where the People's evidence rests on prospective harm. *See id.* at ¶ 33.

¶ 4 We granted certiorari to review the court of appeals' opinion[2] and now reverse.

## II. Standard of Review

▆ ¶ 5 This Court reviews issues of law de novo. *Lucero v. People*, 2012 CO 7, ¶ 19, 272 P.3d 1063. Therefore, we review de novo the court of appeals' holding that, as a matter of law, summary judgment is never an appropriate procedural tool in dependency and neglect adjudications based on prospective harm.

## III. Analysis

¶ 6 We begin by reviewing the statutory procedures surrounding an action in dependency and neglect as set forth in the Children's Code and then separately examine summary judgment motions. Ultimately, we combine our analyses and conclude that courts should consider whether summary judgment is appropriate in a dependency and neglect adjudication involving prospective harm on a case-by-case basis.

### A. Dependency and Neglect Proceedings

▆ ¶ 7 Dependency and neglect proceedings are brought under the Children's Code, §§ 19-1-101 to 19-7-103, C.R.S. (2013), the "overriding purpose" of which is to "protect the welfare and safety of children in Colorado by providing procedures through which their best interests can be ascertained and served." *A.M. v. A.C.*, 2013 CO 16, ¶ 10, 296 P.3d 1026.

¶ 8 A dependency and neglect proceeding is initiated when either the local county department of human services or a local law enforcement agency becomes aware of suspected child abuse or neglect. *Id.* at ¶ 11. The entity receiving the information, after taking "immediate steps ... as may be required to protect" the child or children, must inform the appropriate juvenile court or district court with juvenile jurisdiction, which then may authorize the filing of a petition in dependency and neglect. § 19-3-312, C.R.S. (2013).

▆ ¶ 9 A petition in dependency and neglect is filed by the People of the State of

---

1. Both the mother and S.N. have the same initials. To avoid confusion, we refer to the parents as "mother" and "father."

2. Specifically, we granted certiorari to consider: "Whether the court of appeals erred when it held that a trial court can never adjudicate a child dependent and neglected based on prospective harm in response to a motion for summary judgment." Since the issue before us is a purely legal question, we do not consider the factual allegations in this case.

Colorado. *See* § 19–3–502(1), C.R.S. (2013). Indeed, the People are the "exclusive party" entitled to do so. *A.M.*, ¶ 12. After the People file a petition in dependency and neglect, the court must issue a summons that informs the parents of the substance of the petition and their rights. § 19–3–503, C.R.S. (2013). Once the parents appear in court, the court must fully advise them of their statutory rights, including their right to be represented by counsel, their right to contest the allegations, and their right to request a trial by either jury or the court. § 19–3–202, C.R.S. (2013). In either trial by jury or the court, the People have the burden of proving, by a preponderance of the evidence, that the "status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo.App.1989). In determining whether intervention is warranted, the court's "paramount concern" is "the safety of the . . . child, and not the custodial interest[s] of the parent[s]." *L.G. v. People*, 890 P.2d 647, 655 (Colo.1995). If a court enters an order of adjudication, it is not made "as to" the parents but relates "only to the status of the child as of the date of the adjudication." *K.D. v. People*, 139 P.3d 695, 699 (Colo.2006). Simply put, an adjudication is not meant to punish the parents. *L.G.*, 890 P.2d at 655.

■ ¶ 10 Rather, the State's goal is to prevent neglect or abuse. *See People ex. rel. S.G.L.*, 214 P.3d 580, 583 (Colo.App.2009) (stating that an adjudication is, in part, preventative). An adjudication is also remedial because it allows the State to aid the parents in rehabilitating themselves so that they can provide a safe and stable home for the child. *See People in Interest of O.E.P.*, 654 P.2d 312, 317 (Colo.1982). Hence, an adjudication allows the State to intervene into the familial relationship.

■ ¶ 11 To this end, if the court sustains the petition and adjudicates the child dependent and neglected, it will convene a dispositional hearing. § 19–3–508, C.R.S. (2013). This hearing generally must occur within 30 days of the adjudication if the child is less than 6 years old, or 45 days if the child is 6 years of age or older. *Id.* At the dispositional hearing, except in specific circumstances, the court must approve an appropriate treatment plan "to help the parent[s] overcome those difficulties which led to a finding that the child was neglected or dependent." [3] *People in Interest of C.A.K.*, 652 P.2d 603, 610 (Colo.1982); § 19–3–508. An "[a]ppropriate treatment plan" is specifically defined in the Children's Code as one "that is reasonably calculated to render the [parents] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." § 19–1–103(10), C.R.S. (2013). Whether a treatment plan is appropriate depends on the "existing realities" and its "likelihood of success" in rehabilitating the parents and preserving the familial relationship. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo.1986). An appropriate treatment plan can incorporate, depending on the circumstances, many different types of requirements, including, but not limited to, undergoing substance abuse evaluations, undertaking mental health evaluations, participating in therapy, attending parenting classes, maintaining stable housing, acquiring stable employment, and/or attending visitation with the child. *See People ex rel. A.J.H.*, 134 P.3d 528, 534 (Colo.App. 2006). Once the court approves a treatment plan, the parents are then given a reasonable amount of time to comply with it. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo.App. 2007).[4]

■ ¶ 12 In sum, an adjudication is the initial step of a process designed to protect

---

3. A trial court can only find "that an appropriate treatment plan cannot be devised" where "the child has been abandoned as set forth in section 19–3–604(1)(a) and the parents cannot be located, or because the child has been adjudicated as neglected or dependent based upon section 19–3–102(2), or due to the unfitness of the parents as set forth in section 19–3–604(1)(b)." § 19–3–508(1)(e)(I).

4. If the treatment plan fails, the People may then file a motion to terminate the parent-child relationship and the court may enter an order of termination if specific statutory criteria are proven by clear and convincing evidence. § 19–3–604, C.R.S. (2013). In addition, the statutory scheme implicitly requires the trial court to consider and eliminate less drastic alternatives. *M.M.*, 726 P.2d at 1122.

the best interests of the child. In deciding whether to adjudicate a child dependent and neglected, the court must look to the statutory test in section 19–3–102, C.R.S. (2013), which provides several bases for a finding of dependency and neglect, all of which necessitate evidence of abuse or that the child is not receiving the care that he or she needs. For example, the court can adjudicate a child dependent and neglected if "[t]he child's environment *is* injurious to his or her welfare." § 19–3–102(1)(c) (emphasis added).[5] While this and all of the statutory grounds are written in the present tense, because "a rule of statutory construction expressly states that words in the present tense include the future tense," this Court has interpreted this statute to implicitly incorporate the future tense. *People in Interest of D.L.R.*, 638 P.2d 39, 42 (Colo.1981). As a result, a court can adjudicate a child dependent and neglected if, for instance, the child's environment *will be* injurious to his or her welfare. Interpreting the dependency and neglect statute in this manner is consistent with the Children's Code's goal of protecting the best interests of the child because its effect is that, in appropriate circumstances, the parents need not ever have custody of the child prior to the adjudication. *Id.* To instead "requir[e] that a child be placed with [the] parents in order to determine whether proper care and control will be provided or that harm would be done to the child" would not protect the best interests of the child. *See id.* Thus, courts can consider future situations—what has become known as "prospective harm"—when determining whether a child is dependent and neglected. *See id.* at 43; *see also S.G.L.*, 214 P.3d at 583.

¶ 13 Having reviewed dependency and neglect adjudications, we now discuss summary judgment motions generally before determining whether summary judgment is ever an appropriate procedural tool in dependency

and neglect proceedings involving prospective harm.

**B. Summary Judgment**

¶ 14 The Colorado Rules of Civil Procedure allow a court to enter summary judgment, prior to trial, where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). Summary judgment is a useful procedural tool because it enables a court to test whether there is an actual basis for relief or defense. *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 239 (Colo.1984). If there is no real basis for relief or defense, then a trial is unnecessary because the court can decide the case "strictly as a matter of law." *See Morlan v. Durland Trust Co.*, 127 Colo. 5, 10, 252 P.2d 98, 100 (1952).

¶ 15 Summary judgment, however, "is not a substitute for [a] trial." *Mt. Emmons Mining Co.*, 690 P.2d at 239. For it is only at a trial that the court can "assess the weight of the evidence or credibility of [the] witnesses." *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 718 (Colo.1987). As a result, because summary judgment eliminates a trial on the facts, it is a "drastic remedy." *Ginter v. Palmer & Co.*, 196 Colo. 203, 205, 585 P.2d 583, 584 (1978). Where there are genuine issues of material fact, summary judgment is not appropriate "no matter how enticing [given] congested dockets." *Sullivan v. Davis*, 172 Colo. 490, 496, 474 P.2d 218, 221 (1970).

¶ 16 Summary judgment is only appropriate if the moving party establishes that no disputed material facts exist. *Pueblo W. Metro. Dist. v. Se. Colo. Water Conservancy Dist.*, 689 P.2d 594, 600 (Colo.1984). To meet its burden, the moving party can use "pleadings, depositions, answers to interrogatories, ... admissions on file, [and] affidavits." C.R.C.P. 56(c); *Pueblo W. Metro.*

---

**5.** In this case, the People alleged three separate statutory grounds for adjudicating S.N. dependent and neglected: (1) that S.N. "lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian"; (2) that S.N.'s "environment is injurious to ... her welfare"; and (3) that a "parent, guardian, or legal custodian fails or refuses to provide [her]

with proper or necessary subsistence, education, medical care, or any other care necessary for ... her health, guidance, or well-being." *See* § 19–3–102(1). Because, however, whether the trial court properly adjudicated S.N. dependent and neglected is not before us, we use only one of the statutory subsections for illustrative purposes.

*Dist.,* 689 P.2d at 600. While the form of the evidence, such as an affidavit, need not be admissible at trial, the "content or substance of the evidence must be admissible." *Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1210 (10th Cir.2010) (emphasis removed). Only if the moving party establishes that no disputed material facts exist must the opposing party then demonstrate a controverted factual question. *Pueblo W. Metro. Dist.,* 689 P.2d at 600. When determining whether summary judgment is appropriate, the trial court must give the non-moving party all favorable inferences that can be drawn from the record. *See Jones v. Dressel,* 623 P.2d 370, 373 (Colo.1981).

¶ 17 This is not to say, however, that the non-moving party can use "pretense, or apparent formal controversy," to avoid summary judgment. *Sullivan,* 172 Colo. at 496, 474 P.2d at 221. For example, a litigant cannot "merely assert[ ] a legal conclusion without evidence to support it." *Fritz v. Regents of Univ. of Colo.,* 196 Colo. 335, 339, 586 P.2d 23, 26 (1978). In addition, "reliance upon allegations or denials in the pleadings will not suffice when faced with an affidavit affirmatively showing the absence of a triable issue of material fact." *Ginter,* 196 Colo. at 206, 585 P.2d at 585. A genuine issue of material fact also "cannot be raised by counsel simply by means of argument." *Sullivan,* 172 Colo. at 495, 474 P.2d at 221.

¶ 18 If the non-moving party fails to establish a controverted factual question after the moving party meets its burden, the trial court can still only grant summary judgment in a narrow set of circumstances. To properly grant a motion for summary judgment, the trial court must find not only that the material facts are undisputed but also that "reasonable minds could draw but one inference from them" and that the moving party is entitled to judgment as a matter of law. *Gibbons v. Ludlow,* 2013 CO 49, ¶¶ 11, 35, 304 P.3d 239.

¶ 19 We now combine this summary judgment precedent with our review of the statutory procedures surrounding dependency and neglect adjudications to determine whether summary judgment is ever appropriate in a dependency and neglect adjudication involving prospective harm.

## C. Use of Summary Judgment in Dependency and Neglect Adjudications

¶ 20 The court of appeals in this case, "using standards applicable to summary judgment," held that a trial court can never grant summary judgment in a case involving prospective harm. *S.N.,* ¶¶ 16, 33. In arriving at this holding, the court of appeals first concluded that a prospective harm case "requires the fact finder to predict whether, based on the parent's past conduct and current circumstances, it is reasonably likely or expected that the parent will mistreat or fail to provide proper care for the child in the future." *Id.* at ¶ 29. The potential uncertainty regarding a parent's future conduct was particularly troubling to the court and is ultimately why it concluded that summary judgment can never be granted in prospective harm cases: "What [the parent's] future conduct might be and what, if any, risk to [the child] it might create is a purely factual question on which reasonable minds could differ. Thus, the question of prospective harm is inappropriate for summary judgment." *Id.* at ¶¶ 32–33 (citation omitted).

¶ 21 We conclude that the court of appeals' holding that prospective harm is purely a factual question is incorrect. Whether a child is dependent and neglected is a mixed question of fact and law because resolution of this issue necessitates application of the dependency and neglect statute to the evidentiary facts. *See Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1204 (Colo.2000) (stating that whether statutory requirements are met is a mixed question of fact and law). Evidentiary facts are "the raw, historical data underlying the controversy." *Blaine v. Moffat Cnty. Sch. Dist. Re No. 1,* 748 P.2d 1280, 1287 (Colo.1988). By contrast, an ultimate fact "involves a conclusion of law or at least a determination of a mixed question of law and fact [that] settles the rights and liabilities of the parties." *Id.* Hence the material evidentiary facts, not the ultimate legal conclusion, must be undisputed in order for a court to grant summary judg-

ment. We acknowledge that, even when the underlying material facts are undisputed, a court may not be able to determine with absolute certainty the future actions of the parents. But absolute certainty is not required. Rather the question is whether, by a preponderance of the evidence, the legal conclusion is established: whether, for example, if the child is returned to the parents, the child's environment will be injurious to his or her welfare. *See* § 19–3–102(1).

¶ 22 Indeed, reviewing courts have previously approved of trial courts removing mixed questions of fact and law from the trier of fact. For example, in negligence cases, reviewing courts have removed the issue of causation [6] from the jury in response to both motions for summary judgment and motions for a directed verdict.[7] *See, e.g., Schultz v. Wells*, 13 P.3d 846, 848 (Colo.App. 2000) (affirming the trial court's entry of summary judgment in favor of the plaintiff in a negligence case where the plaintiff established a presumption of negligence and the defendant pled the sudden emergency doctrine but did not submit any evidence to support this affirmative defense); *Stout v. Denver Park & Amusement Co.*, 87 Colo. 294, 296, 287 P. 650, 650–51 (1930) (holding, in a case involving a directed verdict, that where there was no conflicting testimony about proximate cause, the court could conclude that the proximate cause of an injury suffered while riding a roller coaster was a blow to the head); *Moore v. Fischer*, 31 Colo.App. 425, 429–30, 505 P.2d 383, 386 (1972) (affirming the trial court's entry of a directed verdict where the defendant introduced no evidence to relieve himself of liability for his admitted negligence in a rear-end car accident). Use of summary judgment or a directed verdict in negligence cases can be permissible because, for example, while the issue of causation in a negligence case is "generally to be resolved by the trier of fact[,] . . . where the facts are undisputed

and reasonable minds could draw but one inference, [the issue] is one of law to be decided by the court and taken from the jury." *Ferguson v. Gardner*, 191 Colo. 527, 530, 554 P.2d 293, 296 (1976).

¶ 23 Thus, if a reasonable trier of fact could not draw divergent inferences when applying the statute to the facts, summary judgment is appropriate. *Cf. Mt. Emmons Mining Co.*, 690 P.2d at 239 ("Even if the historical facts underlying the mixed question might be undisputed, as long as a reasonable trier of fact nevertheless could draw divergent inferences from the application of the legal criteria to the facts, summary judgment should be denied."). We therefore refuse to foreclose the possibility that in cases where the material underlying facts are undisputed, reasonable minds could only reach one conclusion about whether the statutory criteria are met. Thus, trial courts should evaluate whether to grant summary judgment in a dependency and neglect adjudication involving prospective harm on a case-by-case basis.

¶ 24 When applying a case-by-case analysis, courts can use traditional summary judgment standards because a dependency and neglect case alleging prospective harm is no different from any other case involving a mixed question of fact and law. The court must determine whether the material facts are disputed. *Crouse v. City of Colo. Springs*, 766 P.2d 655, 661 (Colo.1988). If the material facts are undisputed, the court must apply the statute to the facts and determine whether reasonable minds can draw differing inferences. *Mt. Emmons Mining Co.*, 690 P.2d at 239. Depending on the undisputed facts of the case, summary judgment may be appropriate. *See In re Tradale CC.*, 52 A.D.3d 900, 900–02, 859 N.Y.S.2d 288 (2008) (affirming the family court's grant of summary judgment in a neglect adjudication where the undisputed facts regarding the

---

**6.** Causation is a mixed question of fact and law. *Yockey Trucking Co. v. Handy*, 128 Colo. 404, 409–10, 262 P.2d 930, 933 (1953).

**7.** The theories underlying a motion for a directed verdict and a motion for summary judgment are "substantially the same": "The essence of both motions is that there is no genuine issue of

material fact to be resolved by the trier of the facts, and that the movant is entitled to judgment on the law applicable to the established facts." *Kaiser Found. Health Plan*, 741 P.2d at 718 n.6 (quoting J. Moore, *Moore's Federal Practice* ¶ 56.04[2] (1987)).

parent's past treatment of other children and current situation established by a preponderance of the evidence that there would be a substantial risk of harm if the newborn was placed with the parent).

¶ 25 In so holding, we understand that summary judgment may be warranted infrequently. A parent's past conduct and current circumstances are likely to be, and perhaps easily, disputed. To foreclose summary judgment in *all* cases, however, was error.

## IV. Conclusion

¶ 26 We hold that courts must evaluate whether summary judgment is appropriate in a dependency and neglect adjudication involving prospective harm on a case-by-case basis. Accordingly, we reverse the judgment of the court of appeals and remand this case to that court for proceedings consistent with this opinion.

JUSTICE COATS dissents, and JUSTICE EID joins in the dissent.

JUSTICE COATS, dissenting.

¶ 27 Because I believe the rationale of the court of appeals was substantially correct and would affirm its judgment reversing the summary judgment of the trial court, I respectfully dissent.

¶ 28 I understand the court of appeals holding to rest on a largely formal distinction between the role of a fact-finder and the role of a court in granting a motion for summary judgment. It reasons that "future conduct," or "prospective harm," is a purely factual matter, and that a prediction of a parent's future conduct in providing care for his or her child derived from even overwhelming evidence of that parent's past conduct with other children is always a matter as to which reasonable minds could differ. Rather than directly disputing that proposition, the majority recharacterizes it as a finding that reasonable minds could always differ about "whether the statutory criteria are met in a dependency and neglect adjudication based on prospective harm," maj. op. ¶ 3, and concludes that the question whether a child is dependent and neglected is a mixed question of fact and law, which can be removed from

the trier of fact. To the extent the majority fails to appreciate the difference between future conduct that may be harmful to the child and the legal characterization of that conduct in terms of the statutory definition of dependency and neglect, it simply fails to address or find fault with the court of appeals rationale; to the extent it actually finds a prediction of future conduct to be a question of law for the court rather than a question of fact for the trier of fact, I consider its reasoning dangerously wrong.

¶ 29 Notwithstanding many careful readings, I confess that the majority's reasoning remains largely a mystery to me. While I find equally baffling its reliance on disparate authorities concerning the meaning and import of dubbing something a mixed question of fact and law, it does appear to me that the majority sees this designation as blurring the distinction between historical facts and the application of a legal standard to them, allowing even the former to be "remov(ed) ... from the trier of fact," maj op. ¶ 22. Quite apart from the immediate problem at hand, I am concerned about the implications of this rationale, as distinguished from simply disagreeing with the proposition that prospective harm cannot be adequately predicted from past conduct, for summary judgment law in general.

¶ 30 With regard to the immediate problem, however, I do *not* understand the court of appeals to hold that summary judgment can never be proper with regard to prospective harm, but only that a lack of any genuine issue of material fact concerning a parent's past conduct and care of other children cannot alone justify granting summary judgment on the basis of a prediction of prospective harm. The court of appeals opinion does not address the question and I do not understand its rationale to imply that undisputed medical evidence of incapacity, for example, or admissions of the parent concerning his or her intended future conduct could not serve to foreclose any genuine dispute concerning prospective harm; and if its holding could be read that broadly, I too believe it would go too far. The court of appeals found that the parents in this case denied the allegations of a risk of prospective harm, and that the trial

court granted the department's motion for summary judgment solely on the basis of findings in a prior proceeding regarding their unfitness and lack of care for other children in the past. It reversed the summary judgment, holding simply that prior conduct alone could never be sufficiently predictive of future conduct to take the question from a trier of fact by summary judgment. In this, I believe it was entirely correct.

¶ 31 Finally, I note that the court of appeals acknowledged a broader disagreement, as evidenced by various alternate opinions in court of appeals cases, about the propriety of summary judgment in dependency and neglect adjudications as an entire class, but found it unnecessary to resolve that disagreement because its holding in this case rested on narrower grounds for disapproval. By concluding that summary judgment may be appropriate in a dependency and neglect adjudication in certain cases involving prospective harm, the majority implicitly, but necessarily, forecloses the broader issue, without briefing, argument, or any consideration at all.

¶ 32 I therefore respectfully dissent.

I am authorized to state that JUSTICE EID joins in this dissent.