The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 4, 2024

## 2024COA3

**No. 23CA0124, *In the Matter of the Estate of Ybarra* —
Colorado Rules for Magistrates — Magistrate has no Authority
to Consider a Petition for Rehearing; Colorado Rules of
Appellate Procedure — Appeals in Civil Cases — Time for filing
Notice of Appeal**

As a matter of first impression, a division of the court of
appeals considers whether a motion seeking an extension of the
deadline to file post-trial motions, or an order granting such a
motion, tolls the deadline to file a notice of appeal under C.R.C.P.
59 and C.A.R. 4(a)(1) when no cognizable C.R.C.P. 59 motion is ever
filed. The division concludes that it does not.

Thus, the division concludes that the appeal was untimely and
was filed beyond the maximum period allowed for excusable neglect
under C.A.R. 4(a)(4). The division also concludes that unique
circumstances don't justify accepting the untimely appeal. The

division accordingly dismisses the appeal for lack of jurisdiction. The court also awards appellate attorney fees and costs to the appellee.

COLORADO COURT OF APPEALS     **2024COA3**

Court of Appeals No. 23CA0124
Adams County District Court No. 20PR222
Honorable Sara Sheffield Price, Magistrate

In re the Matter of the Estate of Ramon Lopez Ybarra, a/k/a Ramon L. Ybarra, a/k/a Ramon Ybarra, deceased.

Raymond Ybarra Jr.

Appellant,

v.

Connie DeLeon, n/k/a Connie Zamora,

Appellee.

---

APPEAL DISMISSED AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GOMEZ
Welling and Lipinsky, JJ., concur

Announced January 4, 2024

---

Solem Woodward & McKinley, P.C., Zachary F. Woodward, Englewood, Colorado, for Appellant

The Moore Law Firm, P.C., Theresa M. Moore, Englewood, Colorado, for Appellee

¶ 1     This case presents a novel issue concerning the timeliness of an appeal — and once again demonstrates the "confusing appellate labyrinth" that has plagued parties who seek to appeal rulings entered by magistrates. *In re Marriage of Stockman*, 251 P.3d 541, 543 (Colo. App. 2010) (quoting *In Interest of C.A.B.L.*, 221 P.3d 433, 443-44 (Colo. App. 2009) (Roy, J., specially concurring)). The appellant in this case, Raymond Ybarra Jr., seeks to appeal a magistrate's order, entered with the required consent, removing him as the personal representative of his father's estate and awarding the appellee, his sister Connie Zamora, damages against him for breach of fiduciary duty, conversion, and civil theft.

¶ 2     After the magistrate entered her order, Ybarra's new attorney sought and obtained an extension of time to "review the [c]ourt record and determine whether post-trial relief may be warranted." Within that extended deadline, the attorney filed a motion for relief under C.R.C.P. 59, which the magistrate denied, citing her lack of authority to grant such relief. Ybarra's attorney then filed a notice of appeal — 110 days after the initial magistrate's order, 66 days after the extended deadline for post-trial motions, and 26 days after the magistrate denied Ybarra's Rule 59 motion. Based on a 49-day

1

appeal deadline, *see* C.A.R. 4(a)(1), this means that, if the deadline to appeal was based on the date of the magistrate's initial order, Ybarra's appeal was 61 days late; if it was based on the extended post-trial motion deadline, his appeal was 17 days late; and if it was based on the date of the magistrate's denial of his Rule 59 motion, his appeal was timely.

¶ 3     Ybarra contends that the appeal deadline was based on the extended post-trial motion deadline.  Specifically, he argues that the magistrate's order granting additional time to seek post-trial relief tolled his deadline for filing an appeal, making his appeal only 17 days late, and that we should accept it due to excusable neglect.  Alternatively, he argues that we should accept the appeal under the unique circumstances doctrine.

¶ 4     We reject both arguments.  Colorado courts have held that a request for an extension of time to file a Rule 59 motion is not itself a Rule 59 motion, *see Campbell v. McGill*, 810 P.2d 199, 200 (Colo. 1991), and that a Rule 59 motion doesn't toll the deadline to appeal a magistrate's order entered where consent was necessary, *see In re Marriage of James*, 2023 COA 51, ¶ 24.  But no published Colorado case has addressed whether obtaining an extension of time to file a

post-trial motion tolls the appeal deadline where no cognizable post-trial motion is filed, particularly following a recent amendment to C.A.R. 4(a).[1] We now hold that it does not. Thus, Ybarra's appeal was filed 61 days late — beyond the maximum period allowed for excusable neglect. *See* C.A.R. 4(a)(4). We also conclude that unique circumstances don't justify accepting the appeal.

¶ 5    We therefore dismiss the appeal for lack of jurisdiction. We also award Zamora her appellate attorney fees and costs, in an amount to be determined by the district court on remand.

## I.    Background

¶ 6    This case stems from a dispute between Ybarra and Zamora concerning their father's estate. Ybarra opened the case by filing an application through which he was appointed as the personal representative of the estate. The court issued a notice informing the parties that "this matter may be assigned to a district court

---

[1] Until July 1, 2022, C.A.R. 4(a)(3) provided that the time to file an appeal didn't start to run until "expiration of a court granted extension of time to file motion(s) for post-trial relief under C.R.C.P. 59, where no motion is filed." Rule Change 2022(05), Colorado Appellate Rules (Amended and Adopted by the Court En Banc, Feb. 24, 2022), https://perma.cc/6EQ9-625W. This provision doesn't apply to Ybarra because the order he seeks to appeal was entered a few months after the amendment went into effect.

3

magistrate" and that "all parties must consent to any decisions made in this matter being performed by a magistrate." The notice stated that, if an interested party didn't object to the notice within fourteen days, that party "will have consented to the magistrate." Neither party filed an objection.

¶ 7     A year later, Zamora filed a petition for removal of the personal representative and for damages under sections 15-12-611(1) and 15-10-501(1), C.R.S. 2023, leading to the order Ybarra now seeks to appeal. In that order, the magistrate found that Ybarra had committed multiple breaches of his fiduciary duties by converting estate assets for the benefit of himself and third parties; removed him as personal representative; awarded damages to Zamora for breach of fiduciary duty, conversion, and civil theft; and awarded Zamora's attorney fees and costs under sections 15-10-504(2)(a) and 18-4-405, C.R.S. 2023. At the bottom of the order was an advisement about the process for appealing a magistrate's order:

> Any order or judgment of a magistrate entered in a proceeding in which consent is necessary is issued with consent and any appeal must be taken pursuant to C.R.M. 7(b). Any order or judgment of a magistrate entered in a proceeding in which consent is not necessary must be appealed no later than fourteen days

4

subsequent to the final order or judgment if the parties are present when the magistrate's order is entered, or twenty-one days from the date the final order or judgment is mailed or otherwise transmitted to the parties, pursuant to C.R.M. 7(a) . . . .

## II. Timeliness of the Appeal

¶ 8      We interpret court rules using the same principles we use to interpret statutes. *People in Interest of B.H.*, 2022 COA 9, ¶ 7. Accordingly, we apply the plain and ordinary meanings of the words in the rules, attempt to give effect to each word, and, where possible, interpret each provision in the rules in harmony with the rules' overall design. *Id.*; *James*, ¶ 7.

¶ 9      The timely filing of a notice of appeal is generally a jurisdictional prerequisite for appellate review. *B.H.*, ¶ 8. The procedure for appealing a magistrate's order or judgment depends on whether the parties had to consent to a magistrate adjudicating the matter. *James*, ¶ 14. In probate cases, the parties' consent is required for a magistrate to hear and rule on any matters filed pursuant to titles 15, 25, or 27 of the Colorado Revised Statutes. C.R.M. 6(e)(2). If consent is required, the matter must be "appealed pursuant to the Colorado Rules of Appellate Procedure in the same

manner as an order or judgment of a district court." C.R.M. 7(b). If consent isn't required, the matter must first be reviewed by a district court judge before this court can review it. C.R.M. 7(a).

¶ 10 Pursuant to the Colorado Appellate Rules, in civil cases, a notice of appeal must be filed within forty-nine days after "entry of the judgment, decree, or order being appealed." C.A.R. 4(a)(1). But under C.A.R. 4(a)(3), "[t]he running of the time for filing a notice of appeal is terminated as to all parties when any party timely files a motion in the lower court pursuant to C.R.C.P. 59." The time to appeal restarts when the Rule 59 motion is resolved — either when it is ruled upon or when it is deemed denied after sixty-three days. C.A.R. 4(a)(3); *see also* C.R.C.P. 59(j).

¶ 11 C.R.M. 5(a), however, prohibits magistrates from entertaining Rule 59 motions, regardless of whether the underlying ruling did or did not require consent. *James*, ¶ 19; *In re Parental Responsibilities Concerning M.B.-M.*, 252 P.3d 506, 510 (Colo. App. 2011). Due to that prohibition, a division of this court recently held that the tolling that ordinarily applies to a Rule 59 motion doesn't apply where such a motion relates to a magistrate's order or judgment. *James*, ¶ 24. The division therefore concluded that the appellant's

filing of a Rule 59 motion with a magistrate concerning a matter for which consent was required didn't toll the appellant's deadline to file an appeal. *Id.* at ¶¶ 24, 26.

¶ 12     Ybarra doesn't reargue the issue decided in *James*. In fact, he acknowledges that his Rule 59 motion didn't toll the appeal deadline. He also acknowledges that the magistrate required consent to decide the underlying issues (which Zamora had raised under title 15) and that the parties gave the requisite consent. *See* C.R.M. 6(e)(2)(A) (consent is necessary for a magistrate to "[h]ear and rule upon all matters filed pursuant to C.R.S. Title 15"); C.R.M. 3(f)(1)(A)(ii) (parties are "deemed to have consented to a proceeding before a magistrate" if they're provided notice of the referral and don't file a written objection within fourteen days). Accordingly, under C.R.M. 7(b), Ybarra had to file his appeal with this court within the forty-nine-day deadline prescribed by C.A.R. 4(a), and his Rule 59 motion didn't toll that deadline.

¶ 13     Ybarra contends, however, that the magistrate's order granting an extension of time to file post-trial motions "ma[de] the finality of the judgment at hand subject to those anticipated motions," which

7

"could have destroyed the finality of the [order on appeal]." This, he contends, tolled his deadline to appeal. We disagree.

¶ 14    Although Ybarra obtained an extension of time to file a post-trial motion, there was no post-trial motion he could've filed that would've tolled the deadline to appeal. The only post-trial motion over which a magistrate has authority to rule — and, thus, the only post-trial motion Ybarra could've properly filed — is a C.R.C.P. 60(a) motion. *See* C.R.M. 5(a) ("Except for correction of clerical errors pursuant to C.R.C.P. 60(a), a magistrate has no authority to consider a petition for rehearing."). But Rule 60(a) motions don't toll the appeal deadline. *See* C.A.R. 4(a)(3); *In re Marriage of Forsberg*, 783 P.2d 283, 284 n.2 (Colo. 1989). And, as we've explained, while Rule 59 motions generally toll the appeal deadline, that tolling doesn't apply in magistrate proceedings. *James*, ¶ 24. We fail to see how an extension of time to seek post-trial relief could toll the appeal deadline in a proceeding where the only available post-trial relief doesn't toll that deadline.

¶ 15    More generally, regardless of what post-trial relief was available to Ybarra, a motion for an extension of time to file a post-trial motion doesn't, in and of itself, toll the appeal deadline. The

8

only motion listed in C.A.R. 4(a)(3) as tolling the appeal deadline is a Rule 59 motion. Therefore, under the plain language of the rule, the filing of any other motion — including a motion for an extension of time to file a post-trial motion — doesn't toll the deadline. *Cf. Forsberg*, 783 P.2d at 284 n.2 (a Rule 60 motion doesn't toll the appeal deadline); *Kindig v. Kindig*, 536 P.2d 320, 322 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)) (stating, in applying an earlier version of C.A.R. 4(a), which listed four specific motions that extended the deadline for filing an appeal, that "[t]he filing of any other motion does not so extend that time").

¶ 16    To be sure, a court may extend the fourteen-day deadline to file a Rule 59 motion, so long as a request for an extension is made before that deadline expires. *See* C.R.C.P. 59(a). And, as Ybarra points out, if a party doesn't obtain an extension of time to seek post-trial relief, a late-filed Rule 59 motion won't toll the appeal deadline. *See Stone v. People*, 895 P.2d 1154, 1156 (Colo. App. 1995). But that doesn't mean that a motion for an extension of time to seek post-trial relief filed during this fourteen-day period, or an order granting such a motion, itself tolls the deadline to appeal. This is because, under C.A.R. 4(a)(3), the deadline to appeal is tolled

9

only upon the "timely" filing of a Rule 59 motion. Thus, while an extension may be necessary to ensure that a Rule 59 motion is timely and will have a tolling effect, that doesn't mean that the extension itself has any impact on the appeal deadline when a cognizable Rule 59 motion is never filed.

¶ 17     Moreover, as our supreme court's decision in *Campbell* makes clear, a motion for an extension of time to file a Rule 59 motion is "not itself a [Rule] 59 motion." 810 P.2d at 200. The court in *Campbell* considered the operation of Rule 59(j), concluding that the Rule 59 motion filed in that case could be deemed denied, at the earliest, the requisite number of days after the effective filing of the Rule 59 motion — not after the filing of a motion for an extension of time to seek Rule 59 relief. *Campbell*, 810 P.2d at 200-01 (applying an earlier version of C.R.C.P. 59(j), in which Rule 59 motions were deemed denied after sixty days). Thus, the deemed-denied date and the restarting of the appeal clock were based on when *the Rule 59 motion* was filed, not when *the motion for an extension of time* was filed. *See Campbell*, 810 P.2d at 200-01.

¶ 18     If the Rule 59 motion dictates when the appeal clock restarts, then it must also dictate when the appeal clock tolls. Any other

conclusion would be inconsistent with the plain language of C.A.R. 4(a)(3), which sets the filing and disposition of a Rule 59 motion as the benchmarks for determining when the appeal timeline tolls and restarts. Thus, neither Ybarra's motion for an extension of time nor the magistrate's order granting it tolled the deadline to appeal. Accordingly, the appeal deadline was based on the date of the magistrate's initial order, and the appeal was sixty-one days late.

## III. Excusable Neglect

¶ 19 Having concluded that the appeal was sixty-one days late, we needn't consider the merits of Ybarra's contention that excusable neglect justifies his untimely appeal. This is because the notice of appeal was filed after our authority to accept an appeal based on excusable neglect had expired.

¶ 20 C.A.R. 4(a)(4) grants us authority to extend an appeal deadline upon a showing of excusable neglect for up to thirty-five days. After that date, we lack jurisdiction over an appeal regardless of whether the appellant can show excusable neglect. *Heotis v. Colo. Dep't of Educ.*, 2016 COA 6, ¶¶ 24-25; *In re Marriage of Buck*, 60 P.3d 788, 790 (Colo. App. 2002); *see also* C.A.R. 26(c)(1) ("[T]he court may not extend the time to file . . . a notice of appeal beyond that prescribed

in C.A.R. 4(a) . . . .").  Thus, irrespective of whether Ybarra can show excusable neglect, we lack jurisdiction over his appeal.

## IV.    Unique Circumstances

¶ 21    We now turn to Ybarra's argument that unique circumstances justify acceptance of his untimely appeal.  We aren't persuaded.[2]

¶ 22    The unique circumstances doctrine creates a "narrow exception" to the procedural rules that limit our ability to grant extensions, such as C.A.R. 4(a)(4).  *Converse v. Zinke*, 635 P.2d 882, 886 (Colo. 1981).  Because the doctrine applies only in "extreme situation[s]," it's often reserved for cases that involve fundamental liberty interests, such as termination of parental rights.  *People in Interest of A.J.H.*, 134 P.3d 528, 531 (Colo. App. 2006).  And while the doctrine is "rarely invoked," it may apply if an appellant reasonably relies and acts on an erroneous or misleading ruling relating to appellate procedures or deadlines.  *Id.*

---

[2] At least one division of this court has held that the unique circumstances doctrine cannot apply to cases that are filed past the deadline for accepting an appeal under the excusable neglect provision.  *See Heotis v. Colo. Dep't of Educ.*, 2016 COA 6, ¶¶ 32-38. We needn't decide whether we agree because we conclude, at any rate, that Ybarra hasn't established unique circumstances.

¶ 23    For instance, in *P.H. v. People in Interest of S.H.*, our supreme court applied the unique circumstances doctrine to allow an untimely appeal because the case "involv[ed] fundamental values" concerning termination of parental rights and the late filing was a "direct result of [the appellant's] reliance on an erroneous trial court ruling purporting to extend the [appeal] deadline," which the trial court lacked authority to do.  814 P.2d 909, 912 (Colo. 1991).

¶ 24    Here, however, no fundamental rights are at stake, and the magistrate's orders were not erroneous or misleading.

¶ 25    We reject Ybarra's argument that the magistrate's order granting his request for an extension of time to seek post-trial relief was erroneous or misleading.  Unlike the trial court in *P.H.*, the magistrate had authority to grant the extension that Ybarra says caused him to delay filing his appeal.  *See id.*  Ybarra's attorney's generic request for an extension of time to "determine whether post-trial relief may be warranted" included relief from clerical mistakes under Rule 60(a), which the magistrate would've had authority to adjudicate.  *See* C.R.M. 5(a).  Thus, when the magistrate granted the extension, she wasn't extending a deadline or authorizing a motion over which she lacked authority.  Nor did anything in her

order suggest that Ybarra could file, or that she could adjudicate, a Rule 59 motion. And to the extent that Ybarra suggests that the magistrate could've clarified the scope of her authority earlier by highlighting it in her extension order or ruling sooner on his Rule 59 motion, it wasn't the magistrate's responsibility to clarify what post-trial relief Ybarra intended to seek or to forewarn him that she lacked authority over Rule 59 motions. *See Chavez v. Chavez*, 2020 COA 70, ¶ 37 ("[Courts] are not obligated to act as advocates or do the work of counsel.").

¶ 26    We also reject Ybarra's argument that the initial order by the magistrate was erroneous or misleading because it lacked a clear advisement under C.R.M. 7(b). *See* C.R.M. 7(a), (b) (requiring that a magistrate's order or judgment include an advisement of the applicable appeal process). The order included the relevant language that "[a]ny order or judgment of a magistrate entered in a proceeding in which consent is necessary is issued with consent and any appeal must be taken pursuant to C.R.M. 7(b)." Of course, it would've been clearer had the order provided only the C.R.M. 7(b) advisement without adding the C.R.M. 7(a) advisement. But we cannot say that the inclusion of the additional information was

erroneous or misleading, particularly given that Ybarra has never indicated that his attorney was confused about which route of appellate review applied in his case. Thus, this case is nothing like *C.A.B.L.*, where the appellant relied on erroneous advice from a magistrate who told her that she could appeal by filing a petition for review with the district court when, in actuality, the appeal needed to be filed with this court. 221 P.3d at 440-41.

¶ 27    Indeed, divisions of this court have declined to apply the unique circumstances doctrine in similar circumstances. For example, the division in *Heotis* declined to apply the doctrine, notwithstanding that the appellant had misunderstood the applicable process for appealing a magistrate's order issued where consent was necessary and that the record didn't indicate whether the magistrate's order had included the required advisement. *Heotis*, ¶¶ 20-23, 27, 37. Among the reasons the division cited supporting its decision were that the case didn't involve a fundamental liberty interest or an "extreme situation." *Id.* at ¶¶ 39-40, 42 (quoting *A.J.H.*, 134 P.3d at 531).

¶ 28    Although we sympathize with Ybarra's predicament in losing his appeal rights because of his attorney's apparent confusion

15

about the effect of his post-trial filings, we, like the division in *Heotis*, conclude that the unique circumstances doctrine cannot be extended to apply to the situation before us. We also reiterate the *Heotis* division's assessment that, "even if there is some confusion in th[e] [magistrate] rules, the solution does not lie in contorting the law of appellate jurisdiction to remedy it; the solution lies, instead, in amending the rules." *Id.* at ¶ 45.

¶ 29 We therefore decline to apply the unique circumstances doctrine. Accordingly, we lack jurisdiction over this appeal.

## V. Appellate Attorney Fees and Costs

¶ 30 Zamora requests an award of her appellate attorney fees and costs under sections 15-10-504(2)(a) and 18-4-405 based on Ybarra's breach of fiduciary duty and civil theft. We agree that these statutes entitle Zamora to an award of her reasonable attorney fees and costs incurred in this appeal defending the magistrate's findings of breach of fiduciary duty and civil theft. *See* § 15-10-504(2)(a) (damages for breach of fiduciary duty may include attorney fees and costs); § 18-4-405 (damages for civil theft may include attorney fees and costs); *Tisch v. Tisch*, 2019 COA 41, ¶ 93 (awarding appellate attorney fees under section 18-4-405). *See*

*generally Bailey v. Chamblee*, 192 So. 3d 1078, 1083 (Miss. Ct. App. 2016) (an appellate court has jurisdiction to award appellate attorney fees even if it lacks jurisdiction to review the judgment); *Morand v. Stoneburner*, 516 So. 2d 270, 271 (Fla. Dist. Ct. App. 1987) (same).

¶ 31 Because we grant Zamora's request under sections 15-10-504(2)(a) and 18-4-405, we don't consider her alternative request for appellate attorney fees under C.A.R. 38.

¶ 32 We exercise our authority under C.A.R. 39.1 to remand the case to the district court to determine a reasonable amount of appellate attorney fees and costs to be awarded to Zamora.

## VI. Disposition

¶ 33 The appeal is dismissed, and the case is remanded to the district court to determine and award Zamora her reasonable appellate attorney fees and costs.

JUDGE WELLING and JUDGE LIPINSKY concur.