24CA0519 Vinson v Daniel McCracken 12-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0519
Pueblo County District Court No. 23CV30457
Honorable Tayler M. Thomas, Judge

Elizabeth Vinson and Aaron Vinson,

Plaintiffs-Appellants,

v.

Lianna J. Daniel McCracken,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE YUN
Kuhn and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 5, 2024

Naylor & Geisel, P.C., Teagan E. Boda, Pueblo, Colorado, for Plaintiffs-Appellants

The Getchey Law Firm, P.C., Kyle A. Getchey, Colorado Springs, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this landlord-tenant dispute, the plaintiffs, Elizabeth Vinson and Aaron Vinson (the tenants), appeal the district court's order dismissing two of their claims against Lianna J. Daniel McCracken (the landlord) and granting summary judgment against them on a third.  We affirm the court's summary judgment on their retaliation claim.  But we reverse its ruling dismissing their claims for breach of contract and breach of the warranty of habitability, and we remand the case to the district court for further proceedings on those claims.

## I.    Background

¶ 2    The tenants entered into a lease to rent a home (the property) from the landlord for one year, from August 1, 2021, to July 31, 2022.  Among other provisions, the lease stated that the landlord would provide appliances including a dishwasher and microwave and that, if the property were "deemed uninhabitable due to damage beyond reasonable repair," the tenants could terminate the lease.

¶ 3    According to the complaint and the more definite statement requested and filed under C.R.C.P. 12(e), the tenants discovered after moving in that the landlord had not provided a microwave or

1

dishwasher.  The tenants also found multiple unsanitary conditions at the property, including a broken pipe under the kitchen sink draining into a moldy bucket, "a hole full of some sort of debris" in the bathroom, garbage on the lawn, and a nonfunctional tub drain. Although the tenants made repeated requests for repairs and cleaning, the landlord did not respond to a majority of these requests.  Within a month of moving in, the tenants and their children developed rashes, leading to multiple medical visits and the eventual discovery that the property was infested with bed bugs. The landlord hired a company to treat the infestation, but the treatments were unsuccessful.  When the landlord disputed the need for additional treatments, even as the tenants continued to find "live bugs in their beds," the tenants reported the uninhabitable condition of the property to the Pueblo Department of Public Health and Environment (the Department).  In May 2022, a Department inspector confirmed the presence of bed bugs and noted several other safety risks at the property, including broken stairs and a smell of sewage coming from the bathroom sink.

¶ 4     The tenants decided to rent another home in June 2022 but were delayed in moving out because their personal belongings first

2

had to be treated to avoid spreading the bed bug infestation to their new home. On August 10, 2022, ten days after the lease expired, the landlord filed an eviction complaint against the tenants. A week later, when the landlord failed to appear in eviction court, the complaint was dismissed for failure to prosecute. The tenants moved out on August 25, 2022.

¶ 5 A year later, the tenants filed suit against the landlord alleging three claims: breach of contract, breach of the warranty of habitability, and retaliation. The landlord moved for a more definite statement under Rule 12(e), explaining that the complaint did not make clear the "factual and legal basis" of the tenants' claims. The district court granted the landlord's motion, and the tenants provided a more definite statement. The landlord then moved to dismiss the tenants' breach of contract and warranty of habitability claims under Rule 12(b)(5) and for summary judgment on the tenants' retaliation claim under C.R.C.P. 56. The district court granted the landlord's motions in their entirety.

¶ 6 The tenants now appeal.

## II.     Analysis

¶ 7     The tenants contend that the district court erred by (1) dismissing their breach of contract claim; (2) dismissing their warranty of habitability claim; (3) granting summary judgment to the landlord on their retaliation claim; (4) "treating the motion to dismiss" the first two claims "the same as the motion for summary judgment" on the third claim; and (5) granting the landlord's motions to dismiss and for summary judgment when the landlord failed to confer with the tenants before filing.  We address each contention in turn.

### A.     Breach of Contract

¶ 8     The tenants contend that the district court erred by dismissing their breach of contract claim under Rule 12(b)(5) for failure to state a claim upon which relief can be granted.  We agree.

#### 1.     Standard of Review

¶ 9     "We view with disfavor a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim." *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010).  We review such motions de novo and apply the same standards as the trial court.  *Ditirro v. Sando*, 2022 COA 94, ¶ 31.

¶ 10    To survive a Rule 12(b)(5) motion to dismiss, "a complaint must state a claim that is plausible on its face." *Potts v. Gaia Child., LLC*, 2024 COA 58, ¶ 15 (citing *Warne v. Hall*, 2016 CO 50, ¶ 24). "A complaint is plausible on its face if the plaintiff has pleaded facts that permit a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* The reviewing court must accept all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Id.* "We will uphold the grant of a C.R.C.P. 12(b)(5) motion only when the plaintiff's factual allegations do not, as a matter of law, support the claim for relief." *Ditirro*, ¶ 31 (citation omitted).

## 2.    Law and Discussion

¶ 11    To prevail on a breach of contract claim, a plaintiff must prove "(1) the existence of a contract, (2) the plaintiff's performance of the contract or justification for nonperformance, (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract. *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 46.

¶ 12    The district court found that the tenants' "[c]omplaint and [m]ore [d]efinite [s]tatement do not set forth a specific provision of

5

their lease that [the landlord] allegedly breached, and for which they incurred damages." But in both their complaint and more definite statement, the tenants alleged that the lease required the landlord to provide them with a microwave and dishwasher. They alleged that "[a] microwave was not provided" and that, when they bought their own microwave, "faulty wiring in the home caused the microwave to be destroyed," necessitating their purchase of "a second microwave and surge protector." They further alleged that the landlord did not provide a dishwasher "until several months after [the tenants] had moved into the property."

¶ 13 Additionally, they alleged that "the largest problem was the cleanliness and upkeep of the property," that the landlord "had a duty . . . to provide habitable housing for [the] tenants," and that "[t]he condition of [the] property when the [tenants] moved in and throughout their tenancy violated this duty." Although they did not refer to it by name, the lease contained a provision stating that "[t]he Landlord shall be responsible for repairs to the interior and exterior of the building." In their more definite statement, the tenants alleged that they "made repeated requests for repairs and cleaning" and that the landlord "did not respond to a majority of

6

these requests." They further alleged damages resulting from the condition of the property, including multiple medical visits (with dates provided for eleven specific instances) and the cost of hiring an exterminator to treat their personal belongings so that they could move out.

¶ 14    Accordingly, contrary to the district court's finding, we conclude that the tenants adequately alleged a breach of the lease and resulting damages.

¶ 15    The district court also found that the tenants "do not dispute" that they missed one or more rent payments and that they thus "set forth no facts to establish that they performed under the lease." But the second element of a breach of contract claim is the plaintiff's performance of the contract "or justification for nonperformance." *Univ. of Denver*, ¶ 46.  As the district court itself noted, "There is no question [that the tenants'] allegations of bed bugs . . . and other issues of safety and uncleanliness raise significant concerns about the habitability of the property." Because the lease contained a provision that gave the tenants the right to terminate due to the uninhabitable condition of the property, their nonperformance may have been justified.  Therefore,

contrary to the district court's findings, the instances of nonpayment are not necessarily fatal to their breach of contract claim.

¶ 16 We thus conclude that, taking all the allegations in the complaint as true and viewing them in the light most favorable to the tenants, the tenants' breach of contract claim was plausible on its face. *See Potts*, ¶ 15. Accordingly, we reverse the district court's dismissal of this claim under Rule 12(b)(5).

### B. Breach of the Warranty of Habitability

¶ 17 The tenants contend that the district court erred by dismissing their warranty of habitability claim. We agree.

#### 1. Standard of Review

¶ 18 As described above, we review a district court's ruling on a Rule 12(b)(5) motion to dismiss de novo, applying the same standards as the district court. *Ditirro*, ¶ 31.

#### 2. Law and Discussion

¶ 19 In her motion for a more definite statement, the landlord explained that the complaint did not make clear whether the warranty of habitability claim arose under the lease, under the warranty of habitability statute, §§ 38-12-501 to -512, C.R.S.

8

2021,[1] or under the bed bugs in residential premises statute, §§ 38-12-1001 to -1007, C.R.S. 2024. She further noted that the tenants had not alleged "a date [they] provided notice" to the landlord that the property was uninhabitable or a failure by the landlord to address the uninhabitable condition within the "statutorily prescribed timeline." Accordingly, the landlord could not discern the legal basis for the warranty of habitability claim and could not prepare an answer.

¶ 20    In their more definite statement, the tenants clarified that they were bringing the claim under the warranty of habitability statute. They alleged that the landlord "indicated repeatedly that she preferred phone calls over other communications" and that they "informed [the landlord] of the uninhabitable condition of the property on numerous occasions." They did not indicate the dates on which they provided notice or allege how long it took the landlord to respond.

---

[1] The warranty of habitability statute has been amended several times. The 2021 version of the statute was in effect at the time of the lease and the alleged breach of the warranty of habitability. We therefore refer to the 2021 version throughout this opinion.

¶ 21    Under the statute, an element of a breach of the warranty of habitability is that "[t]he landlord has received reasonably complete written or electronic notice of the [uninhabitable condition of the property] and failed to commence remedial action by employing reasonable efforts within" either twenty-four or ninety-six hours, depending on the nature of the uninhabitable condition. § 38-12-503(2)(b), C.R.S. 2021. "A tenant who gives a landlord electronic notice of a condition shall send such notice only to the e-mail address, phone number, or electronic portal specified by the landlord in the rental agreement for communications."[2] § 38-12-503(2.3). "Electronic notice" means notice by electronic mail or an electronic portal or management communications system that is available to both a landlord and a tenant. § 38-12-502(4), C.R.S. 2021.

¶ 22    The district court found that the tenants indicated they communicated with the landlord via phone calls and failed to allege they provided the landlord written or electronic notice, as required under the statute. Thus,

---

[2] The landlord provided an email address and phone number in the lease.

> [w]ithout any facts to support sufficient compliance with the statutory notice requirements[,] the landlord cannot be found to have breached the warranty of habitability. Here, because [the tenants] have not established sufficient notice under the habitability statute, a mandatory element, the claim for breach of warranty of habitability fails the basic plausibility test.

¶ 23    We disagree with the district court's analysis. Although the landlord "indicated repeatedly that she preferred phone calls over other communications," it is not at all clear that the communications took place only by phone call. Instead, in the more definite statement, the tenants alleged that the landlord communicated with them and others on several occasions by text message or other electronic communication. More importantly, they alleged that they "informed [the landlord] of the uninhabitable condition of the property on numerous occasions"; that they "made repeated requests for repairs and cleaning"; and that they gave the landlord "proper notice under C.R.S. § 38-12-503(2)(b), which states that notice can be either written or electronic, and [the] landlord failed to commence remedial actions in the correct time period." Taking all of the tenants' allegations as true and viewing them in the light most favorable to them, *see Potts*, ¶ 15, we cannot say that

11

their communications with the landlord took place only by phone call.

¶ 24    We therefore conclude that the district court erred by dismissing the tenants' warranty of habitability claim under Rule 12(b)(5).  The tenants did state a claim for breach of the warranty of habitability under section 38-12-503 that was plausible on its face.  If the evidence later shows that the tenants did not give adequate "written or electronic notice" of the uninhabitable condition of the property, the landlord may file a motion for summary judgment.  But it was premature for the district court to conclude under Rule 12(b)(5) that no such notice was given.

### C.    Retaliation

¶ 25    The tenants contend that the district court erred by granting summary judgment to the landlord on their retaliation claim.  We disagree.

### 1.    Standard of Review

¶ 26    We review a district court's order granting summary judgment de novo.  *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 19.  "Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting C.R.C.P. 56(c)).

¶ 27    "The moving party bears the initial burden of showing no genuine issue of material fact exists; the burden then shifts to the nonmoving party to establish a triable issue of fact." *Id.* at ¶ 20.  All doubts must be resolved against the moving party, and the nonmoving party "must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts." *Id.* (quoting *Tapley v. Golden Big O Tires*, 676 P.2d 676, 678 (Colo. 1983)).

## 2.    Law and Discussion

¶ 28    In their more definite statement, the tenants alleged that the landlord "filed an eviction [action] and added late fees" in retaliation for their reporting the uninhabitable condition of the property to the Department.  Those were the only retaliatory actions alleged.  The tenants indicated that they were bringing this claim under the retaliation section of the lease and section 38-12-509, C.R.S. 2021.

¶ 29    The retaliation section of the lease provides that

13

[t]he [l]andlord is prohibited from making any type of retaliatory acts against the [t]enant(s) including but not limited to restricting access to the [p]remises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

¶ 30     Section 38-12-509, in turn, provides that "[a] landlord shall not retaliate against a tenant by increasing rent or decreasing services or by bringing or threatening to bring an action for possession" in response to the tenant's making "a good faith complaint . . . to a governmental agency" alleging an uninhabitable condition.  § 38-12-509(1)(a).  If a landlord retaliates against a tenant, "the tenant may terminate the rental agreement" and recover damages.  § 38-12-509(2).

¶ 31     It is undisputed that the lease expired on July 31, 2022, and that the landlord filed the eviction complaint on August 10, 2022. Because the only retaliatory actions the tenants alleged were the eviction complaint and late fees — and not, for example, a retaliatory refusal to clean or repair the property after the tenants made their report to the Department but before the lease expired — the tenants have not explained how the landlord violated the retaliation section of the lease.  Further, on appeal, the tenants do

not renew their argument that the landlord violated the retaliation section of the lease, relying instead on section 38-12-509.  We thus consider this argument abandoned.  *See Gonzales v. Windlan*, 2014 COA 176, ¶ 32 n.1 (appellate court will not address claims raised below but not reasserted on appeal).

¶ 32     Under section 38-12-509(2), the tenant's remedy for a retaliatory eviction is to "terminate the rental agreement."  The statute thus contemplates a landlord's "bringing or threatening to bring an action for possession" while a rental agreement is in effect. § 38-12-509(1).  Here, the landlord submitted exhibits with her motion for summary judgment showing that she served the tenants with a demand for unpaid rent on July 12, 2022, and filed for eviction on August 10, after the lease expired.  In their response, the tenants did not dispute that they were behind on rent or that the landlord did not file the eviction complaint until after the lease expired.  Rather, they stated that "[w]hen [the landlord's] actions in filing the eviction are put into full view of all of their other actions up to that point, it paints a picture of retaliation."

¶ 33     As the district court found, the tenants' response was insufficient to create a genuine issue of material fact regarding their

retaliation claim. *See People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 17, ("[R]eliance upon allegations or denials in the pleadings will not suffice when faced with an affidavit affirmatively showing the absence of a triable issue of material fact." (quoting *Ginter v. Palmer & Co.*, 585 P.2d 583, 585 (Colo. 1978))). Because we agree with the district court that there was no genuine issue of material fact and that the landlord was within her rights to pursue eviction after the tenants overstayed the lease and did not pay rent, we conclude that the court did not err by granting summary judgment for the landlord on the tenants' retaliation claim.

### D. Treating the Motions the Same

¶ 34 The tenants contend that the district court erred by "treating the motion to dismiss" the breach of contract and warranty of habitability claims "the same as the motion for summary judgment" on the retaliation claim "without giving proper notice." Specifically, they argue that "all three claims were ruled upon in the same manner and include[d] [the consideration of] any affidavits written by [the landlord] outside of the pleadings." But that is not what happened. In its order, the district court dismissed the breach of contract and warranty of habitability claims under Rule 12(b)(5)

and granted summary judgment under Rule 56(h) on the retaliation claim. The only affidavit submitted by the landlord pertained to her filing for eviction and, thus, to the tenants' retaliation claim. There is no indication in the district court's order that it considered the affidavit for any other purpose. We thus discern no error.

### E. Failure to Confer

¶ 35 The tenants contend that the district court reversibly erred by granting the landlord's motions to dismiss and for summary judgment when the landlord failed to confer with the tenants before filing. We disagree.

¶ 36 C.R.C.P. 121, section 1-15(8), provides that, "[u]nless a statute or rule governing the motion provides that it may be filed without notice, moving counsel . . . shall confer with opposing counsel . . . before filing a motion." However, as the district court noted, the committee comments to this section indicate that the duty to confer is not required in all cases, although "[i]f there has been no conference, the reason why must be stated." C.R.C.P. 121, § 1-15(8) cmt. 2. It is undisputed that the landlord's counsel did not confer with the tenants' counsel and did not state the reason why there had been no conference.

¶ 37    Under the harmless error standard, we will not disturb a judgment unless a court's error affected the substantial rights of the parties.  C.R.C.P. 61.  An error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself."  *Bly*, 241 P.3d at 535 (quoting *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986)).  Here, the district court found that, because the landlord's dispositive motions surely would have been opposed, "conferral would have been fruitless."  We agree and thus conclude that any error in the court's failure to enforce the conferral requirement was harmless.

### F.    Attorney Fees

¶ 38    The landlord requests her appellate attorney fees under section 13-17-102(2), C.R.S. 2024, on the grounds that the tenants' appeal "lacked substantial justification."  An argument lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious."  § 13-17-102(9)(a).  But because we agree with the tenants' first two contentions, we cannot conclude that the appeal lacked substantial justification, and we decline to award appellate attorney fees.

### III.  Disposition

The district court's summary judgment on the tenants' retaliation claim is affirmed.  Its dismissal of their breach of contract and warranty of habitability claims is reversed, and the case is remanded to the district court for further proceedings on those claims.

JUDGE KUHN and JUDGE BERGER concur.